The judgment is therefore correct and must be affirmed.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY. Co. *v.* GILLEY.

Opinion delivered January 3, 1916.

1.   MASTER AND SERVANT — SAFE APPLIANCES — VARIOUS USES.—Even though the instrumentalities which a master furnishes his servant are reasonably safe for the one special and primary purpose for which they are designed, the master must still exercise ordinary care to make the appliances reasonably safe for use for other purposes to which they are assigned to the servant in the discharge of his duties.

2.   MASTER AND SERVANT—INJURY TO SERVANT—SAFE APPLIANCES.— Where the arms of the seats in a railway passenger coach were used by the scrubbers in their work in the cars, and the practice

of using the same was known to the master, the latter will be liable for damage growing out of an injury received by one of its employees, by reason of a defect in said seat arm, which directly caused the injury.

3. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCE—CONTRIBUTORY NEGLIGENCE.—Plaintiff, an employee of defendant, was injured by reason of a defect in the arm of a seat in a passenger coach, which he was using as a support in his work of scrubbing the coach. *Held*, although the master had warned its employees to inspect for defects, that it was a question for the jury to determine whether the servant was guilty of contributory negligence or assumed the risk, by failing to discover the defect in the appliance furnished him.

4. MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCES—EVIDENCE OF CUSTOM OF MAKING REPAIRS.—Plaintiff was injured while engaged in scrubbing a railway coach, by the falling of a seat arm, which he was using as a support in his work. *Held*, it was proper to admit evidence in behalf of the plaintiff that it was the custom of the railway carpenters to securely fasten the seat frames before the cars were sent to the paint shop, where plaintiff was injured; the custom and method of carrying on repairs in the shops, being the essence of plaintiff's case, was admissible in evidence.

Appeal from Lonoke Circuit Court; *G. W. Hendricks,* Judge; affirmed.

*Troy Pace,* for appellant.

1. Appellant was entitled to an instructed verdict, for the reasons: (a) There is a total failure of proof that the seat was an instrumentality provided for appellee's use and therefore no duty rested upon appellant to have it in a reasonably safe condition. (b) There was no necessity for any such special instrumentality, and (c) Appellees violation of the rule requiring him to personally examine the scaffolding, tackle, etc., was direct and proximate cause of the injury. 3 Labatt's Master & Servant, § 921; 85 Ark. 600. Where a servant is injured while in violation of the rules promulgated for his safety, he is *per se* guilty of contributory negligence. 84 Ark. 377; 77 *Id.* 405; 96 *Id.* 461; 85 *Id.* 237; 84 *Id.* 74, 1 Labatt's Mast. & Serv. § 365; Dresser on Employer's Liability, § 109; 26 Cyc. 1160; 37 Am. Rep. 651; 15 S. E.

522; 51 S. W. 580-582; 117 Ark. 504; 30 N. E. 391; 111 Ind. 212; 57 N. E. 949-951.

2.   It was error to give instruction No. 1 asked by appellee.   Blocking the main guard rails was intended to prevent feet from being caught and held and not hands and arms.   19 S. W. 38.

3.   There is no presumption of negligence; negligence of the master must be shown.   101 Ark. 119; 98 *Id.* 202; 90 *Id.* 331; 82 *Id.* 372.

4.   The testimony of Laman and Perry was not admissible.   Neither had worked in that department—they had acquired no more than an opinion and just *guessed*.

*Trimble & Williams* and *Murphy & McHaney,* for appellee.

1.   There was ample proof. The company knew the use made of the arm rests.   The officials saw the use made constantly and not only did not prohibit it, but used it themselves.   The rule was constantly violated.   175 S. W. 1175.   Appellant overlooks the law of comparative negligence.   Contributory negligence is no bar.   Acts 1911, § 3, Act No. 88, p. 57.

2.   There was no evidence of the promulgated rule, and there was no error in the court's charge.   The testimony of Laman and Perry was from actual knowledge, and not "guess-work."

McCULLOCH, C. J.   This is an action against the railway company instituted by the plaintiff, its servant, to recover damages on account of alleged negligence of other servants of the defendant.   The plaintiff was working in the repair shops at Argenta, in the painting department.   He was what they term a "scrubber," his duties being to scrub the wood work of the passenger coaches or to burn off the old paint preparatory to revarnishing or repainting the wood work.   A scaffold was furnished for the scrubbers to stand on while working on the inside of a coach.   The scaffold consisted of long wooden planks, 2 by 12 inches, resting on wooden horses placed about 20 feet apart.   The scaffold was 4 feet high and ran along the aisle of the coach from end to end.   The

men worked in crews and while at work were standing along this platform, which they mounted by stepping on the arm-rests of the frames for the seats. It is alleged in the complaint that that was the customary method for the men to mount the platform, and the evidence warrants the conclusion that the portion of the seat frame constituted a part of the appliances furnished to the scrubbers in getting to their places of work. It is also alleged, and the evidence tends to show that it was customary for a car sent to the shops for repairs to be first sent to the carpenter's shops where the repairs in that department were made, and that such repairs were supposed to be completed before the car was sent to the paint shop. Plaintiff received his injuries while he was attempting to mount the platform by stepping on the arm rest of the seat frame. Those frames were fastened to the floor and to the wall of the coach by screws, the end of the frame next to the aisle being screwed down to the floor, and the other end screwed to the wall. This car had been to the carpenter shop and the workmen had failed to fasten the end of the seat frame to the wall, and when plaintiff stepped on the arm-rest next to the aisle, and put his weight on it preparatory to stepping upon the platform, the other end of the frame flew up and struck him a violent blow on his side. Two ribs were broken, and the evidence tends to show that the injuries received were serious. He was sent to the hospital where he remained about two months, and his testimony tends to show that at the time of the trial he had not recovered from the injuries and was still suffering. The jury awarded damages in the sum of $500.00, which is a very moderate sum as compensation for the injuries shown to have been received.

It is earnestly insisted by counsel for the defendant that according to the undisputed testimony there is no right of recovery, and that the case should not have been submitted to the jury. The contention is, in the first place, that the seat frames were placed in the coach to accommodate passengers, and not as a part of the appliances

furnished to the workmen for their use in doing their work. Counsel rely upon the well settled doctrine that the master's duty with respect to instrumentalities furnished to the servant "is restricted to seeing that they are reasonably safe for the performance of the functions for which they are designed." 3 Labatt's Master & Servant, § 921; *St. L. & S. F. Rd. Co.* v. *Hill,* 79 Ark. 76; *C., R. I. & P. Ry. Co.* v. *Murray,* 85 Ark. 600.

(1) Even though the instrumentalities are reasonably safe for one special and primary purpose for which they are designed, the master's duty is not fulfilled if ordinary care is not exercised to make them reasonably safe for use for other purposes to which they are assigned to the servant in the discharge of his duties. 3 Labatt's Master & Servant, pp. 2462-2465.

(2) The learned author whose work has just been cited states the correct rule as follows: (p. 2465) "If new functions are imposed upon an instrumentality by the master himself or his representative, and the servant is thereby exposed to undue risks, the master must answer for any injury resulting from those risks, and can not excuse himself by showing that the instrumentality was a suitable one for the performance of the work for which it was originally supplied. The master's acquiescence in the use of an appliance for some purpose other than that for which it was intended puts him in the same position as if the appliance had been originally furnished for that purpose. Accordingly, a qualification of this rule, that a servant cannot recover in the absence of evidence showing that the appliance in question was constructed with reference to the use to which it was being put when the accident occurred, is admitted in cases where it appears that it was customary for employees to put it to that use, and that the master knew of this custom. But the mere fact that an appliance had been diverted to new uses before the accident in suit will not render the master liable, if that diversion occurred without his knowledge or consent."

Now, the evidence in this case shows that it was customary for the workmen to use the arm-rests as steps in mounting the platform, and the conclusion is warranted that this custom was so general, that the representatives of the defendant must have been aware of it and acquiesced in such use. In fact, the testimony abundantly warrants the conclusion that the platform was designed with reference to the use of the arm rests as a step from which to mount. This being true, it is proper to treat the seat frames as part of the appliance furnished to the workmen for use in scrubbing the oars; and it was the duty of the master to exercise ordinary care to make that part of the appliances, as well as the platform itself, reasonably safe for use of the workmen. This is true, even though the primary and principal use of the seat frame was to accommodate passengers in the coaches.

(3) It is also contended that the undisputed evidence shows that a rule of the company required the workmen to "examine personally scaffolding, tackle and other appliances before trusting them." The time card, signed by each workmen and used every day in checking in and out, contained a copy of that rule. That rule did not, however, constitute the employee as the inspector of the appliances, but required him "to make only such cursory inspection in the course of his regular duties as will discover defects open to ordinary observation and not to search for hidden defects." *St. L., I. M. & S. Ry. Co.* v. *Webster,* 99 Ark. 265; 4 Labatt's Master & Servant, (2 ed.), § 1341, p. 3846.

It was a question for the jury to determine whether the plaintiff himself was guilty of contributory negligence or assumed the risk by failing to discover the defect in the appliances furnished to him. The testimony is undisputed that it was customary for the carpenters to finish their work of repair before the cars were sent to the paint shop, and the plaintiff had a right to some extent to rely upon the assumption that the duties of the carpenters had been discharged and that the seat frames

were securely fastened.   Plaintiff testified that the absence of the screws from their proper places in the frames was not observable by ordinary inspection and that it would have been necessary to put his fingers in the screw holes to determine whether they were in place, the iron frames having been painted the same color as the wall. The jury could, under the testimony, have found that the plaintiff was guilty of contributory negligence in failing to discover the fact that the seat frame was not securely fastened, but it can not be said as a matter of law that he was guilty of contributory negligence or that he assumed the risk.   That was, as before stated, under the facts of this case a question for the jury.

(4)   Another ground insisted on for reversal is that the court erred in allowing witnesses to testify that it was customary for the carpenters to complete their work and securely fasten the seat frames before the coaches were sent to the paint shop.   That custom and method of carrying on the repairs in the shop was of the very essence of the plaintiff's case, and it was competent evidence.   The only way to establish the existence of that method of the work was by the testimony of witnesses who were familiar with it.   Those witnessess showed, we think, sufficient familiarity with the custom of conducting the work there to enable them to testify on the subject, and we think there was no error committed in allowing them to state the facts within their knowledge.

There are assignments of error with respect to the refusal of the court to give certain instructions requested by defendant, but we are of the opinion that the instructions given fully and completely submitted the issues to the jury.   The discussion of the principles applicable to the case are sufficient in disposing of the assignments of error concerning the instructions.

Finding no error in the record, the judgment is affirmed.