Judgment reversed and the case remanded for further proceedings not inconsistent herewith.

[redacted]

## MISSOURI PAC. R. CO. v. SPANGLER.

No. 12570.

Circuit Court of Appeals, Eighth Circuit.

Feb. 25, 1944.

[redacted]

918

Thomas B. Pryor, of Ft. Smith, Ark., and Harvey G. Combs, of Little Rock, Ark., for appellants.

J. Loyd Shouse, of Harrison, Ark. (H. J. Denton, of Cotter, Ark., on the brief), for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one in negligence for personal injuries, under Arkansas common law, by an employee against a railroad company and its trustee in reorganization.[1] On a trial to a jury there was a verdict for the employee. Both parties filed motions for a new trial, and the court set aside the verdict. On a re-trial, the jury returned another verdict for the employee, and, from the judgment entered thereon, the company and its trustee have appealed.

The employee claimed to have been injured when a twelve-foot ladder, used in reaching the pit of a pump house at Cotter, Arkansas, gave way as the employee undertook to descend it, in the course of his duty to oil the pumps, causing him to fall to the floor of the pit. The complaint alleged that, unknown to the employee, the ladder had rotted at the bottom, causing a piece to break off one side, and that the company was negligent in having permitted it thus to become unsafe for use, and in having failed to make proper inspections of it and to keep it in repair, and in not having provided a safe working place and a safe instrumentality, in the employee's duty to descend into the pit to oil the pumps.

The principal contention urged for a reversal is that the court erred in not directing a verdict against the employee. It is argued that the employee was guilty of contributory negligence as a matter of law, in not personally having inspected the ladder before he used it, and that the situation also was one where in any event the employee, as a matter of law, should be held to have assumed the risk.

As to contributory negligence, the company and its trustee rely upon the employee's failure to observe the following company rules: "Machinery, tools and appliances must not be used until examined, and, if found defective, must not be used. Ladders and scaffolding not in safe condition must not be used. Ladders must be inspected before used to make sure they are free from defects."

The employee admitted that he had made no inspection of the ladder before he began to descend into the pit, but he contended that such observation as was practicably possible in the situation would not have revealed the defect. His evidence showed that the ladder was a heavy structure, of 4 x 6 timbers, twelve feet in length, intended for stationary use in the pump house, and not moved from one place or task to another, like an ordinary ladder; that it had been in the same location for years and had been used by him several times daily during that period, without any outward indication of impairment; that the company had a special inspector whose duty it was to make periodical inspections of the ladder and of conditions in the pump house generally; that the ladder ordinarily stood in six to eight inches of water at the bottom of the pit; that the part which broke off, as the employee began to descend, was a five-inch piece from the lower right-hand side; that from this piece it was apparent that the wood had rotted; that the pit itself was dark, "You just barely can see down in the bottom of the pit"; and that because of the stationary character of the ladder, the location of its base in water, and the dark condition of the pit, as well as the previous use of the ladder through a period of years without any outward indication of danger, the employee did not know that the ladder was impaired and the defect was not one which could have been detected by such general, ordinary observation as was open to him in the situation.

On this evidence, the employee's duty to inspect and the relation of his failure to do so as a proximate factor in the accident were questions for the jury from the facts and circumstances of the situation, and not questions for the court. Failure to inspect would not constitute contributory negligence as a matter of law, unless it indisputably could be said to have borne a causal relationship to the accident. Again, the rules relied on here did not prescribe specific acts of inspection, and the duty imposed was therefore simply general and one that might vary with the situation. Thus, the practical opportunity of an employee in his work to inspect a movable, light ladder, intended for general use about the employer's premises, manifestly might be different than the opportunity to inspect a heavy, stationary ladder, located in a dark pit, standing in water, and intended,

[1] The Missouri Pacific Railroad Company instituted reorganization proceedings in 1933, under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and these proceedings are still pending.

920

like a stairway, to constitute a stable means of entry and exit in the daily use of the pump house. And it certainly could hardly be contended that the company's rules, as a matter of law, imposed on the employee the duty to slide down a rope into the pit, splash around in the water with a flashlight, and then pull himself back up to the pump house shelf, before he was at liberty to make an official descent on the ladder. Indeed, the jury might well regard such a heavy, stationary ladder as being essentially a part of the place of employment, like a stairway, rather than an instrumentality or appliance of the work itself, such as the rules would seem to have been intended to cover; and particularly so in view of the fact that the company maintained a special inspector who was charged with the duty of inspecting and keeping the ladder in repair, as part of the general pump-house conditions.

 But, even if the jury treated the ladder as being a tool or appliance, within the scope of the company's rules, the employee was entitled, since the rules did not attempt to prescribe specific acts of inspection, to have his duty to inspect measured by the general standards of Arkansas law. Under Arkansas law, a servant is not required to search for latent defects in appliances, but only "to take notice of such defects or hazards as are obvious to the senses" or as are "patent to ordinary observation." Little Rock, M. R. & T. Ry. Co. v. Leverett, 48 Ark. 333, 3 S.W. 50, 55, 3 Am.St.Rep. 230; Smith v. McEachin, 186 Ark. 1132, 57 S.W.2d 1043, 1045. See also St. Louis, I. M. & S. R. Co. v. Rogers, 93 Ark. 564, 126 S.W. 375, 1199; St. Louis, I. M. & S. R. Co. v. Webster, 99 Ark. 265, 137 S.W. 1103, 1199, Ann.Cas.1913B, 141; St. Louis, I. M. & S. R. Co. v. Gilley, 121 Ark. 507, 181 S.W. 918. Within the princi-

ple of these cases, we can not say that the defect here was, as a matter of law, an obvious or patent one, in the situation presented by the evidence. It was for the jury to decide whether such general observation or inspection as the employee reasonably and practicably could have been expected to make in the conditions of the situation would have detected the defect and the danger. If it would not, then the employee's failure to inspect was not contributory negligence,[2] because it could not have been a proximate factor in the accident.

 As to assumption of risk, it is the contention of the company and its trustee that the ladder was a simple tool, whose defects were more readily discoverable by the employee than by the employer, and hence were assumed by the employee, and that there therefore could be no liability. See 35 Am.Jur., Master and Servant, § 177. But the simple tool doctrine has never been given an absolute legal application in Arkansas; "the simplicity of a tool, and the skill or lack of it required in its use, have been treated as questions to be considered in determining the degree of care to be used by the master in the selection of such tools for the purposes of his servant." Arnold v. Doniphan Lumber Co., 130 Ark. 486, 198 S.W. 117, 118. "There is no hard and fast rule that may be laid down as governing the liability of an employer for a defect in common tools." Chicago, R. I. & P. R. Co. v. Smith, 107 Ark. 512, 156 S.W. 166, 170. "Ordinarily, the simplicity of a tool is but a circumstance to be considered by the jury in determining the duty resting upon the master in furnishing it and of the servant in using it." Norton & Wheeler Stave Co. v. Wright, 194 Ark. 115, 106 S.W.2d 178, 181. "The duty resting upon the master in the selection and inspec-

[2] Violation of a safety rule may, of course, constitute contributory negligence as a matter of law in Arkansas, where the servant is injured "while in violation of that rule and on account of the violation thereof." St. Louis, I. M. & S. R. Co. v. Dupree, 84 Ark. 377, 105 S.W. 878, 879, 120 Am.St.Rep. 74. Where the rule prescribes or prohibits a certain specific act, the causal relation of a violation to the accident may naturally be more clearly obvious than in the case of some indefinite or general requirement, such as is here involved. See Missouri Pac. R. Co. v. Guy, 203 Ark. 166, 157 S.W.2d 11, 13 ("Repairs to motor cars, weed burners and discers must not be made while the machinery is in motion."); St. Louis, I. M. & S. R. Co. v. Steel, 129 Ark. 520, 197 S.W. 288 (Blue flag required to be put out as a signal of danger while working under cars); Snellen v. Kansas City S. R. Co., 82 Ark. 334, 102 S.W. 193 (Employee not permitted to work on a car on any track except the repair track without instructions from the foreman or chief inspector); Young v. St. Louis, I. M. & S. R. Co., 100 Ark. 380, 140 S.W. 584 (Fireman required to notify engineer before going under engine).

tion of the instrumentalities which the servant used in his work in all cases is to use ordinary care that they are reasonably adapted and safe for the purpose intended, and, in determining that question, the simplicity of the tool and the skill required in its use is one of the circumstances to be considered in determining whether or not the master has exercised ordinary care." Smith v. McEachin, 186 Ark. 1132, 57 S.W. 2d 1043, 1045. And beyond all this, as we have heretofore suggested, the jury was not absolutely required to recognize the ladder here as being a simple tool or a general appliance, in view of its character and the nature of its use. A ladder stationed by the employer at a particular place in the plant, for the purpose of providing the workmen with a regular and necessary means of going from one level to another at that point, may properly be found to constitute a part of the place of employment and not an appliance of the work. See Annotation, 145 A.L.R. 542, 553–556. On the evidence, the jury was at liberty to treat this ladder as being a part of the place of employment and as such being subject to the general duty of the master to provide the servant with a reasonably safe place to work and to make reasonable inspections to see that it is kept in such condition.[3] But, whether the ladder was found to be an appliance of the work or a part of the place of employment, the circumstances shown by the evidence would not permit of a declaration that the employee had assumed the risk as a matter of law.

A number of other contentions have been made for reversal, but these require only brief consideration. What has been said above disposes of the questions presented by the exceptions taken to two of the trial court's instructions. The contention that the evidence does not warrant any finding of negligence against the company is without sound basis. The condition of the ladder, under the circumstances of its location, character and use, and the evidence that it was the duty of a company inspector to examine it and keep it in repair, considered in connection with the manner in which the defect developed and the accident resulted, were sufficient to permit the jury to infer that the ladder was not in a reasonably safe condition and that proper care had not been exercised by the company to keep it so.[4] On the care exercised by the company, its inspector had testified that "I was in that pump pit, I would be safe in saying, once a month", but he did not state what examination, if any, he had ever attempted to make of the ladder up to the time of the accident, or when was the last time that this had been done, although he admitted "that ladder would rot standing in the water there for more than twelve years."

The contention that the relation of the employee's disability to the accident claimed was purely a matter of guess and speculation is also one on which we are not privileged to reverse, under the evidence in the record. While there was evidence in previous expressions of the employee, as well as in other testimony, that would have permitted the jury to find that the accident and the injuries had not occurred as claimed in this action, no such finding can be said to have been required as a matter of law. Purported explanations were made of the employee's previous expressions and of the circumstances which had prompted them, and the jury had the right to accept and believe these explanations, if it chose to do so.[5] Thus, one explanation given was that the employee had been urged by his foreman and other company employees not to tell of the accident, so that no report would have to be made of it, because this might impair the chances of the railroad division in which Cotter, Arkansas, was located to win the company's safety award for that year.

Nor was the jury bound to accept as conclusive the testimony of the company

---

[3] "It is the duty of the master to exercise ordinary care to provide his servants with a reasonably safe place in which to work, and reasonably safe appliances with which to work. This duty also includes one of making reasonable inspection to see that the place and appliances are safe." St. Louis, I. M. & S. R. Co. v. Holmes, 88 Ark. 181, 114 S.W. 221, 223. "It is the duty of the master to exercise ordinary care in discovering defects and in repairing them; and he is liable if he fails to exercise that care tested by the circumstances surrounding the character of the employment and the facts of the case." Ozan Lumber Co. v. Bryan, 90 Ark. 223, 119 S.W. 73, 74.

[4] Cf. Mammoth Vein Coal Co. v. Looper, 87 Ark. 217, 112 S.W. 390; F. W. Martin & Co. v. Cobb, 8 Cir., 110 F.2d 159.

[5] Cf. Travelers Ins. Co. v. Johnston, 204 Ark. 307, 162 S.W.2d 480.

922

doctor, taken by deposition at the military camp were he was then stationed, that he had not treated the employee for any injuries from accident on the date involved. The doctor stated that his original records had been placed in the hands of the Missouri Pacific Hospital Association and the company, at the time he went into military service, and that they would show the occasions on which he had previously treated the employee for other complaints. The records covering the employee were, however, not produced by the company in any attempted corroboration of the doctor's testimony, nor was their absence explained to the jury. Two of the employee's neighbors, in addition to himself and his wife, testified that he had been brought home injured during working hours on the date in question, and that the company doctor had called at the house on that occasion to attend him. Another medical expert who later treated the employee for the complications which he contended had resulted from his injuries testified that the disability which he had at the time of the trial could have been caused by an accident such as he claimed.

We have no right to say that all this evidence on behalf of the employee was entitled to no credence as a matter of law. It was the jury's province to determine from the conflicting testimony and its reasonable inferences whether the accident had occurred and whether the employee's disability was a result thereof. Two juries have answered these questions in the affirmative.

The judgment is affirmed.