S. W. SIMMONS *v.* Shirley J. McCOLLUM,
Administratrix of the estate of
Ricky Allen McCOLLUM, Deceased

CA 80-55                                    601 S.W. 2d 232
Court of Appeals of Arkansas
Opinion delivered June 25, 1980
Released for publication July 8, 1980

*Hardin, Jesson & Dawson*, for appellant.

*Witt & Donovan*, for appellee.

ERNIE E. WRIGHT, Chief Judge. Appellee Shirley J.

McCollum, administratrix of the estate of Ricky Allen McCollum, deceased, brought suit against appellant S. W. Simmons to recover damages for wrongful death of her son Ricky resulting from a collison of his motorcycle with a motor vehicle driven by appellant. The jury awarded general damages to the estate in the amount of $8,000.00 and mental anguish damages in the amount of $2,000.00 each to Shirley J. McCollum, mother of the deceased, and Lesa McCollum, minor sister of the deceased.

The appellant brings this appeal from the judgment and for reversal contends (1), the court erred in ruling that the credibility of a witness for appellee could not be tested on cross examination by inquiry about criminal acts, and (2), in submitting to the jury over appellant's objections instructions permitting the jury to consider the award of damages for mental anguish.

Danny Stapleton was a passenger on the decedent's motorcycle at the time of the accident and he and appellant were the only witnesses at the trial who were eye witnesses to the accident. Ricky died a few hours after the accident. Danny Stapleton gave testimony favorable to appellee. In cross examination he admitted he had been convicted of felony theft at Scranton. Counsel for appellant asked the witness if he had broken into anything while living in Russelville and the court sustained an objection ruling that questions of the witness as to criminal actions were inadmissible unless the witness had been convicted.

The court's ruling may well have been erroneous as Rule 608 of the Uniform Rules of Evidence provides that specific instances of conduct may, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross examination. However, there was no proffer of testimony the witness was expected to give. As the record is silent as to what evidence would have been given, we cannot say appellant was prejudiced. An objection to the exclusion of testimony cannot be considered on appeal in absence of a showing as to what testimony would have been. *Boyd* v. *Brown*, 237 Ark. 445, 373 S.W. 2d 711 (1963).

Appellant at the close of the evidence objected to the court submitting the issue of damages for mental anguish to the jury, contending there was no evidence the next of kin sustained any mental anguish over and above the normal expected in the loss of a loved one. The court overruled the objection as to the mother and younger brother and sister of the deceased but did not instruct the jury it could consider damages for mental anguish by the father. The jury found no damages in favor of deceased's brother, Kelly Joe McCollum, who has brain damage and did not testify, and found $2,-000.00 damages each in favor of the mother and the deceased's younger sister, Lesa. In *Peugh* v. *Oliger*, 233 Ark. 281, 345 S.W. 2d 610 (1961), the court held that in order to recover damages for mental anguish, it is necessary the mental anguish suffered be real and with cause, and not merely the result of too sensitive mind or a morbid imagination; and that to recover one must suffer more than normal grief.

In *St. Louis S.W. Ry. Co.* v. *Pennington*, 261 Ark. 650, 553 S.W. 2d 436 (1977), the court stated, "Usually, the trial judge will be in a better position than we are to determine whether there is sufficient evidence to raise a question whether there was more than normal grief." Testimony of the mother of the deceased shows Ricky was 18 years of age at the time of his death; the mother and Ricky's father, who was an alcoholic, were divorced; the mother worked and had the responsibility of raising Ricky's younger sister; Ricky had been in trouble in Oklahoma where the family previously lived and had been in a home for boys there; sometime prior to his death he moved to Arkansas and joined his mother; after coming to Arkansas he burglarized a drugstore for which he pled guilty in 1976 and spent about four months in Tucker Prison; he joined the church while in prison and after he was released the mother and Ricky had long conversations about what they wanted from life and prayed about it; Ricky worked some at construction and at odd jobs after his release. The mother testified, "Ricky and I have always been close. He was my big boy, and his sister, Ricky was always concerned about her and her growing up and everything. Ricky and I got along pretty good. Oh, we had our differences and everything like mothers and sons do, but we loved each other." She testified she tried to take care of Ricky and that

he showed his love for her by being there when she really needed him, and talking to her when she was down; that Ricky carried his younger sister Lesa around like she was a queen when she was a little girl and he thought she was about it; that there was a lot of love between Ricky and Lesa, and Ricky would give her spending money when he had it; and Ricky had agreed he was going to help raise Lesa and hopefully put her through college and that Lesa is an "A" student. Ricky talked about going back to school but she thought he felt he should try to help his mother. She testified she still had not recovered from Ricky's death at the trial some year and a half from his death and she didn't believe she would ever recover from it; that Lesa was still very upset about Ricky's death and that she missed her brother quite a bit; that, "It's been a bad time for all of us", and that one, "would never know what it is like to go through something like that until you have been through it."

The mother went to the scene of the accident but Ricky had been removed to the hospital in Fort Smith and she got to see him for only a minute. She testified she expected Ricky to help her as he entered adulthood because, "he loved me and I loved him", and that there was nothing that could replace his loss.

Lesa, age 13, testified she loved her brother Ricky a lot and he loved her and showed his love for her "all the time." He helped her with everything; his death has been a strain on her and caused her to be upset; he did everything for her like "maybe a father would", and he gave her money all the time. She stated she had a good relationship with Ricky.

The court submitted the issue of mental anguish damage to the jury under the standard AMI Instructions. The jury declined to allow damages to the deceased's brother who did not testify and suffers brain damage, but awarded a modest $2,000 each to the mother and the sister Lesa.

As pointed out in *Pennington*, supra, the trial court is in a better position to determine whether there is substantial evidence to raise a jury question, and this rule is in accord with the general rule for appellate review after the issue of

damage for mental anguish has been submitted to the jury, as stated in 5 C.J.S. p. 1147 as follows:

> Where the trial court submitted the case to the jury, the usual presumption in favor of the trial court obtains, and all reasonable doubts should be resolved in favor of the ruling of the trial court.

When there is substantial evidence tending to establish an issue in favor of the plaintiff it is error to refuse to submit the issue to the jury. *Jones* v. *Lewis*, 89 Ark. 368, 117 S.W. 561 (1909). The objection of appellant to the submission of the issue of mental anguish to the jury was tantamount to moving for a directed verdict as to that issue, and the rule is the trial court must give to plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deducted from it in determining whether to submit the issue to the jury. *Hawkins* v. *Missouri Pacific Railroad Company*, 217 Ark. 42, 228 S.W. 2d 642 (1950). If fair minded men might show different conclusions from the eivdence, it is error to direct a verdict. *Smith* v. *McEachin*, 186 Ark. 1132, 57 S.W. 2d 1043 (1933).

After carefully reviewing the evidence in support of mental anguish damage we are unable to say the trial judge, who heard the testimony and observed the witnesses, erred in submitting the mental anguish damage issue to the jury and permitting the jury to determine whether the mother and sister of the deceased suffered more than normal grief.

Affirmed.

PENIX, J., dissents in part, and would reverse the portion of the judgment awarding mental anguish damage.

MARIAN F. PENIX, Judge, dissenting. It is never easy to attempt to gauge the amount of mental suffering experienced by the family of a young person who is accidentally killed. However, the case law in Arkansas has laid down legal principles that must be employed in determining whether there is any evidence justifying the submission of mental anguish as an element of damage. The record reflects the deceased had

been a delinquent youth. There was testimony Rickey McCollum had been in trouble with the law and had been an incorrigible. While Rickey was incarcerated in Oklahoma in 1975 his mother moved to Paris, Arkansas. Rickey ran away from the industrial school in Oklahoma and went to Texas. His mother did not see him for long periods of time. In the few months preceding the fatal accident Rickey had lived as a transient and stayed the night infrequently with his mother.

*St. Louis Southwestern Railway Company* v. *Pennington, Admr.,* 261 Ark. 650, 553 S.W. 2d 436 (1977) sets out the following elements which have been considered by the Arkansas case law to be significant indications of "more than the normal grief occasioned by the loss of a loved one":

(1) Sleeplessness or troubled sleep over an extended period.
(2) Frequency of association and communication
(3) Obvious extreme or unusual nervous reaction to the death
(4) Crying spells over an extended period of time
(5) Adverse effect on survivor's work or school
(6) Change of personality of the survivor
(7) Loss of weight by survivor and other physical symptoms.

We can of course conjecture the Mother grieved over Rickey's delinquency, *but* there is absolutely nothing in this record to indicate the grief over his death was other than normal. Arkansas cases require a showing of more than normal grief. The Court erred in submitting to the jury mental anguish as an element of the family's damage.

As a mother, I agonize for Rickey McCollum's mother. However, a great portion of Arkansas law is based on case law. Our cases have many times over required a definite showing of grief over and beyond the normal grief before mental anguish becomes a proper element of damage to be submitted to the jury. Our legal system is built upon Arkansas cases taken as precedent.

I respectfully dissent.