**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Allen STAR, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard Everett BEATTY, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Jack CRAWFORD, Defendant-Appellant.**

**Nos. 72–1947, 72–1972, 72–2081.**

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1972.

---

1. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

John E. Virga (argued), Sacramento, Cal., Robert J. Jaffe (argued), San Francisco, Cal., Howard Jameson (argued), Martinez, Cal., for defendants-appellants.

William B. Shubb, Asst. U. S. Atty. (argued), Bruce Babcock, Jr., Asst. U. S. Atty., Dwayne Keyes, U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before JERTBERG and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

The appellants, Star, Crawford, and Beatty, were convicted of conspiring to violate the Gun Control Act of 1968, Pub.L. No. 90–618 (the Act). In addition, Star was convicted on five counts of aiding and abetting violations of the Act. Crawford was convicted of two counts of possessing and transferring a destructive device. 26 U.S.C. §§ 5861(d) and (e). Beatty was convicted on three counts of possessing a destructive device.

Star owned a service station in Benicia, California. In May, 1971, Star and his employee, Alan Burris, plotted to bomb the station of a competitor, Anthony Lavezzo. Crawford, the owner of a

---

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

bait shop in Benicia, agreed to sell Star several bombs.

On June 4, 1971, Burris and his friend, Perry Blake, set out to bomb Lavezzo's station. They went to Crawford's bait shop where they bought three bombs for $45. Late that night, Blake and Burris placed two bombs near the gas pumps. One bomb exploded, and the police found the other unexploded. On June 6, Star told Burris to explode the third bomb under Lavezzo's tow truck. Burris did this with help from Beatty, another Star employee.

On June 11, 1971, an informant told a local police officer that Burris was responsible for the bombings and that Crawford made the bombs at his bait shop. While investigating this tip, the police uncovered more incriminating facts. On the affidavit of Officer Bidou, the police obtained a warrant from the Justice Court in Benicia to search Crawford's bait shop. On June 18, they searched the shop and found a jar containing ANFO (an explosive mixture) which was similar to the unexploded bomb found at Lavezzo's station.

On August 4, 1971, the grand jury indicted appellants and named Burris and Blake as coconspirators. Burris pleaded guilty to possession of a destructive device, and Blake, a juvenile, was granted immunity.

Thereafter, a Treasury Agent asked Stephanie Boen, Beatty's girl friend, about Beatty. Miss Boen refused to answer the Agent's questions. On November 10, 1971, the Agent served Miss Boen with a subpoena at her high school and took her directly to the grand jury. There she was asked if she knew where Beatty was during the bombings. She gave the grand jury the names of three people with whom she believed Beatty had been on the night of the second bombing.

Appellants' joint trial began on November 15, 1971, and continued until December 10, 1971. Both Burris and Blake testified at great length for the government. Star objected to Blake's testimo-

ny because Blake, asserting his Fifth Amendment privilege, refused on cross-examination to answer some questions about his use of drugs. None of the appellants testified. Neither did they call any of the people mentioned by Miss Boen.

Appellants seek to reverse their convictions on three grounds. Crawford contends that the warrant to search his bait shop was issued without probable cause. Beatty claims that the government acted improperly when it subpoenaed Miss Boen to testify before the grand jury. Star contends that the trial court erred when it refused to strike Blake's testimony.

### I. *The Search Warrant*

When the judge in Benicia issued the warrant to search Crawford's bait shop, he knew that the bombings had occurred. The only question was who was responsible for the crimes. The original tip came from an untested informant. But the warrant was not issued on this tip alone.

In his affidavit, Officer Bidou said that another local policeman, Inspector Zerby, disguised himself as a narcotics buyer and talked with Burris. Burris told Zerby the same story about the bombings, although he did not mention Crawford's role in the crimes. Burris told Zerby that he paid $45 for the bombs, the same price the informant mentioned to Bidou. Burris described the bombs to Zerby in enough detail to show that Burris had participated in the bombings or was close to someone who had.

Even though Burris did not mention Crawford to Zerby, Burris' statements to Zerby corroborated everything else the informant told Bidou. In addition, Crawford's role in the crime was corroborated by other information. The information told Bidou the address where he believed Crawford made the bombs, and this address proved to be the address of Crawford's bait shop. Bidou learned from a third policeman that Crawford

was familiar with explosives from a construction job. Bidou also found that Crawford was a convicted felon.

■ Together, this information shows that the informant reliably reported what Burris told him. For many of the same reasons there was adequate information to support Burris' credibility, particularly since his story was entitled to special weight because it was against his penal interest. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

The Justice Court properly found there was probable cause to issue the search warrant.

## II. *The Grand Jury Testimony*

Before trial, Beatty moved to require the United States Attorney to disclose Miss Boen's grand jury testimony. He also moved to suppress any evidence obtained from this testimony and to dismiss the indictment against him. The trial court denied these motions.

■■ Beatty alleges that the government subpoenaed Miss Boen for the sole purpose of learning the names of any alibi witnesses Beatty might use at his trial. The government has offered no other justification for its action. We agree that the government should not use the grand jury for the sole purpose of pretrial discovery in cases in which an indictment has already been returned. In re National Window Glass Workers, 287 F. 219 (N.D.Ohio 1922). We condemn any such conduct by the United States Attorney. Nevertheless, we do not believe that Beatty's conviction should be reversed.

Beatty's counsel, with commendable frankness, admits he was unable to find any evidence of prejudice brought about by the government's misconduct. Counsel's motions to disclose and suppress would have been no benefit to Beatty. Miss Boen was cooperating with Beatty and told him and his counsel what she told the grand jury. Suppression would have been equally futile because the persons Miss Boen named never testified, nor did their names come up at the trial. We believe the trial court correctly denied the motion to dismiss the indictment under the circumstances here, particularly since there was no prejudice shown.

## III. *Blake's Testimony*

■ Blake was granted immunity and was one of the government's principal witnesses. On cross-examination, Star's attorney asked Blake about his use of drugs. Blake asserted his Fifth Amendment privilege and refused to answer whether he was an habitual user of certain illegal drugs. The trial court ruled that Blake had to answer any question concerning events during the week up to and including the bombings and during the week up to and including his testimony at the trial. Since Blake's immunity was limited to these periods, the trial court did not compel him to answer questions about his use of drugs at other times.

Counsel's cross-examination was not limited, except on the narrow question of whether Blake had been a long-term user of drugs. Counsel made an offer of proof that prolonged use of some drugs, particularly methadrine, can impair a person's memory. He moved to strike all of Blake's testimony on the ground that this was necessary to protect Star's confrontation rights. The trial court denied the motion. We see no reason to reverse.

Appellants' cross-examination of Blake extended over two days and covered 100 pages of the transcript. In the opinion of the trial court, appellants "cross-examined [Blake] about the facts of the case about as much as anyone possibly could." (R.T. at 767). Appellants attacked Blake's credibility and memory in many other ways, and the jury had ample opportunity to assess Blake's memory while he testified. A trial court has wide discretion to determine whether a witness's testimony must be stricken be-

cause cross-examination was restricted. Coil v. United States, 343 F.2d 573, 578 (8th Cir.), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965). There was no abuse of that discretion here.

Affirmed.