William C. HORNE *v.* STATE of Arkansas

CA CR 84-38                          677 S.W.2d 856

Court of Appeals of Arkansas
En Banc
Opinion delivered October 3, 1984

*Hale, Lee, Young, Green & Morley,* by: *R. Wayne Lee,* for appellant.

*Steve Clark,* Att'y Gen., by: *Theodore Holder,* Asst. Att'y Gen., for appellee.

Tom Glaze, Judge. Appellant was convicted of first degree murder. The jury found that appellant, with premeditation and deliberation, as required by Ark. Stat. Ann. § 41-1502 (Repl. 1977), had beaten the deceased, David Michel, to death. Appellant was sentenced to thirty years imprisonment.

In this appeal, appellant raises six points for reversal. Appellant challenges the sufficiency of the evidence to sustain a conviction of first degree murder. He also maintains that the trial court impaired his constitutional right of confrontation and cross-examination. Finally, appellant contends that the trial court erred in allowing the State to charge him with first degree murder after initially charging him with second degree murder, in admitting certain evidence into the State's case in chief against him, in allowing the State's to refer to his commission of another crime, and in failing to give a requested instruction to the jury. Of these six allegations of error, only the points concerning the sufficiency of the evidence, the reference to another crime and the limitation of cross-examination merit detailed discussion.

All witnesses' descriptions of the initial events of appellant's encounter with Michel are consistent. On the evening of November 10, 1982, Michel was drinking in a Little Rock tavern with three friends. John Lock, one of Michel's friends, got into a scuffle with appellant; both Lock and appellant were ejected from the tavern. Michel and one or two of their companions joined Lock outside the establishment, and one of them challenged appellant to meet them on the parking lot of a nearby K-Mart store.

Appellant testified that he pulled his truck onto the lot to see if a nearby Safeway store was open because his girlfriend wanted to buy some cigarettes. Once he was on the parking lot, a car was pulled onto the lot at a high rate of speed and the driver tried to cut him off from an exit. He turned his truck, and the driver of the car tried to cut him off again. According to appellant, when a second car entered the parking lot, he stopped his truck because "I didn't think that there was any way I could get by without them both trying to block me off again." Next, two or three people got out of one of the cars, fanned out and tried to circle his truck. After a bottle struck his truck, appellant got out of his vehicle with his .30-.30 rifle and fired two shots into one of the cars. Appellant stated that he was scared that he and his girlfriend were going to be hurt. He stated he "was not aware of anyone in the car" and fired into it "to scare the people that were

running after me away and hopefully to disable their car where they couldn't follow me." After appellant fired the shots, his antagonists returned to the car and fled. Appellant stated that, during this rapid sequence of events, as he was getting into his truck, he heard the sound of footsteps on metal and saw someone diving toward the back of his vehicle off the top of a nearby tractor-trailer truck. Appellant stated that he did not see the man hit the pavement of the parking lot but that he did hear "bones pop" when the man struck the pavement. He did not move toward the back of his truck to determine what happened but, instead, wanting "to get out of there," he started his truck and left the parking lot. Appellant testified that he did not know who dove off the truck, and he emphatically denied that he struck the deceased with his rifle butt. Appellant's girlfriend's testimony was essentially the same as appellant's.

The companions of the deceased, Lock and Matthew Webre, tell a different story concerning the events that occurred on the K-Mart parking lot. According to them, they saw the appellant's truck and followed it onto the lot. They stated that they pulled up beside appellant's truck and asked him what was wrong. Lock stated that they were not seeking appellant to attack him but to "get calmed down with him." Rather than respond to their question, appellant drove his truck away and turned it around so he was facing their automobile. Then, according to these witnesses, appellant got out of his truck, bent over the back of the truck and fired two rifle shots into their car, both of which struck John Lock, who was sitting on the passenger side of the car in the front seat. After the shooting, Webre drove Lock to a nearby hospital. Earlier, while appellant was turning his truck around, David Michel got out of the car and began running toward a Salvation Army trailer parked on the lot. Lock and Webre stated that they did not leave their car and that they did not see Michel after he got out of Webre's car. Webre stated that no one threw a bottle at appellant's truck.

At trial, in addition to the testimony outlined above, the State introduced the testimony of a passerby, Marcella Shelley, who stated that, on the night in question, she saw a boy standing over another boy who was prostrate on the

parking lot. This witness saw the boy who was standing holding a cane or a shillelagh. The State also introduced testimony of a co-worker of appellant who stated that appellant told her he had hit a man with his rifle butt and had beaten him up. Also, the State introduced numerous exhibits; among them were the shirt that Michel was wearing on the night in question, x-rays of his body, and a transparency of the butt of appellant's rifle. Both appellant and the State introduced the testimonies of medical experts. The State's expert witness, the chief medical examiner of Arkansas, declared that the deceased had been struck with a hard object on the left collarbone, on the back of the shoulder, and on the head with tremendous force. The medical examiner testified that the pattern of the injuries was consistent with the State's theory that appellant struck the deceased with a rifle butt and that the deceased's body showed no indication of having been injured in a fall. During cross-examination, the chief medical examiner stated that "[I]t would be impossible for Michel to suffer these injuries if he jumped from a trailer." One medical expert, testifying on appellant's behalf, stated that Michel could have sustained his injuries by jumping off a tractor-trailer rig and striking the rear of appellant's truck. Another expert, testifying for appellant, said that Michel's injuries were caused by a fall and not by a blow from a hard object.

Of appellant's six allegations of error, one — the limitation of his right of cross-examination — clearly merits reversal and remand. Appellant wished to challenge the credibility of the eye-witness, Marcella Shelley, based on her psychological records. Appellant made a pre-trial discovery motion for these records based on his belief that Shelley had such psychological impairment that she frequently fantasized events that never occurred. The trial court denied the motion. During a pre-trial hearing, appellant's attorney tried to question Shelley's psychologist to determine if her mental condition affected her credibility as a witness. The psychologist evoked the psychotherapist-patient privilege of Arkansas Uniform Rule of Evidence 503 and refused to discuss *any* of Shelley's psychological history. When appellant asked the trial court to order the psychologist to testify, the trial court ruled:

> These records ... are protected by patient-doctor relationship. The Doctor, if he were to testify, would violate that privilege and confidence. I am not going to order those records to be disclosed, and *he can't testify to anything about that treatment* unless she permits him to. That is the reason the rule is in here. (Emphasis supplied.)

The trial court also ruled that the privilege prevented appellant from calling the psychologist to rebut Shelley's expected testimony about her psychological condition and that Shelley did not have to assert her psychotherapist-patient privilege before the jury. Finally, the trial court refused to order the psychologist to proffer his testimony about Shelley's mental condition into the record. At trial, Shelley admitted that she had received psychological counseling to help her tolerate back pain.

The trial court's refusal to order Shelley's psychologist to testify about his treatment of her was clearly error. *Baker v. State,* 276 Ark. 193, 637 S.W.2d 522 (1982), unequivocally holds that the privilege of Rule 503 does not prohibit testimony identifying a patient's medical treatment. The Arkansas Supreme Court in *Baker* rejected a motion that Rule 503, the physician and psychotherapist/patient privilege, protected "any information" exchanged between doctor and patient; instead, the Court construed the privilege narrowly to protect only *confidential communications between doctor and patient.*[1] Here, appellant attempted to elicit information from the psychologist concerning whether his treatment of Shelley involved any impairment on her part to perceive correctly the events to which she would testify in this cause. As earlier stated, appellant sought to show Shelley suffered from a histrionic personality, causing her to fantasize events that never happened. In short, appellant's inquiry to the psychologist was directed toward his diagnosis of Shelley's mental condition and not his confidential communications with

---

[1]Not all jurisdictions construe the privilege as narrowly as Arkansas. *See generally,* S. Stone and R. Liebman, *Testimonial Privileges* 390-92 (1983); E. Cleary, *McCormick on Evidence* 248-49 (3d ed. 1984).

her. Nonetheless, the trial court's ruling effectively excluded appellant's effort to obtain *any* information from the psychologist. Of course, such a ruling runs contra to the Supreme Court's desire expressed in *Baker* to give full range to the accused's constitutional right to confront and cross-examine witnesses against him.[2] Given the Arkansas Supreme Court's emphasis in *Baker* on the narrow protection afforded by Rule 503, we feel compelled to reverse and remand this case for a new trial.

Because appellant will have a new trial, we will resolve his other allegations of error that could reoccur there. First, appellant contends that the State did not adduce any evidence that he premeditated the murder of David Michel. Appellant's argument is three-fold: (1) appellant was not acquainted with Michel and had no quarrel with him; (2) expert medical witnesses testified that Michel's injuries could have been caused by a fall; (3) the State put forward no evidence showing appellant weighed in his mind the decision to strike the deceased. Appellant's first sub-point seems to be a suggestion that the State failed to prove appellant had a motive for murdering Mr. Michel; however, the State is not bound to prove a motive for the killing. *Ezell* v. *State*, 217 Ark. 94, 229 S.W.2d 32 (1950). Appellant's second and third sub-points were discussed in our recent case of *Jones* v. *State*, 11 Ark. App. 129, 668 S.W.2d 30 (1984). Like the instant case, *Jones* was a first degree murder case in which the evidence of premeditation and deliberation consisted of expert testimony regarding the nature, extent and location of the wounds inflicted on the deceased. As in the instant case, both sides in *Jones* presented conflicting testimony concerning the nature and extent and location of the wounds. In this case and in *Jones*, the jury chose to believe the State's expert, the chief medical examiner, who testified that Michel had suffered a broken collarbone, broken ribs and a fractured skull as a result of three blows

---

[2]We recognize that *Baker* was not a psychotherapist-patient case — the testimony at issue there was from a nurse concerning her treatment of a prisoner in the Pulaski County jail for venereal disease. However, Rule 503, on its face, applies to confidential communications between a psychotherapist and his patient made to diagnose the patient's mental condition.

from a hard object and that these injuries could not have been sustained in a fall. It is the jury's duty to assess the credibility of expert witnesses. Testimony of expert witnesses is to be considered by the jury in the same manner as other testimony and in the light of other testimony and circumstances in the case; the jury alone determines its value and weight and may, under the same rules governing other evidence, reject or accept all or any part thereof as it may believe to be true or false. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979), *cert. denied* 449 U.S. 852 (1980), *appeal after remand*, 276 Ark. 149, 634 S.W.2d 92 (1982), *cert. denied*, ___ U.S. ___, 103 S.Ct. 386 (1982). We must affirm the jury's verdict if there is substantial evidence to support it. *Stanley* v. *State*, 248 Ark. 787, 454 S.W.2d 72 (1970). Based on our review of the State's expert testimony and the other facts and circumstances of the case, we find that the State did put forward substantial evidence of appellant's premeditated and deliberated murder of David Michel.

Appellant next contends that the State violated Arkansas Uniform Rule of Evidence 404(b) when it introduced evidence that appellant had shot John Lock twice in the back with his .30-.30 rifle. According to appellant, the evidence had no probative value and was introduced simply to prejudice him by showing that he is a criminal. The State counters that appellant's attack on Lock and his murder of Michel are an indivisible criminal transaction. We agree with the State's characterization of the events on the night in question. The Arkansas Supreme Court has stated repeatedly that all of the acts of a contemporaneous criminal transaction are admissible into evidence. *See Thomas* v. *State*, 273 Ark. 50, 615 S.W.2d 361 (1981).

Appellant also argues that the trial court erred in admitting a shirt that the deceased supposedly wore on the night he was injured because the shirt had not been properly authenticated and because the shirt had been tampered with. David Michel's mother testified that the shirt the State introduced at trial was, in fact, the shirt her son had worn on that night. She testified further that she had washed the shirt because it had a small grass stain on it and that it had no rips or tears in it. We believe this evidence was properly

authenticated under Arkansas Rule of Evidence 901(b)(1), which states that the testimony of a witness with knowledge that an item is what it is claimed to be is proper authentication. The possibility that certain stains on the shirt had been washed away simply goes to the weight the jury was to accord the evidence.

Appellant also contends that the trial court should not have admitted a transparent photograph of appellant's rifle butt and an x-ray of the deceased's rib cage into evidence. The appellant argues that he had not been given the opportunity to examine these exhibits as required by Arkansas Rule of Criminal Procedure 17.1(a)(V), which requires the prosecuting attorney to disclose to the defense counsel, upon timely request, any photographs the prosecuting attorney intends to use at trial. Any prejudice appellant may have suffered from being unaware of this evidence cannot reoccur at his new trial, so we need not decide this point.

Appellant also argues that the trial court erred in allowing the State to charge him with first degree murder after initially charging him with second degree murder. Originally, the State charged appellant with second degree murder; however, the trial court permitted the State to enter a *nolle prosequi* to the second degree murder charge and refile a first degree murder charge. According to appellant, this tactic is a violation of Ark. Stat. Ann. § 43-1024 (Repl. 1977), which states:

> The prosecuting attorney or other attorney representing the State, with leave of the court, may amend an indictment, as to matters of form, or may file a bill of particulars. But no indictment shall be amended, nor a bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged. All amendments and bills of particulars shall be noted of record.

However, in the case of *Abernathy* v. *State*, 278 Ark. 250, 644 S.W.2d 590 (1983), the Arkansas Supreme Court upheld just such a procedure. It is true that in *Abernathy* four

months passed between the filing of the new charge and the appellant's trial and that only two weeks passed in the case at bar. However, because appellant denied all along that he struck the deceased, we fail to see how appellant was surprised or otherwise prejudiced in the preparation of his defense. In a related argument, appellant contends the filing of the first degree murder charge was a violation of his constitutional due process rights because the filing of the charge was motivated by prosecutorial vindictiveness when appellant refused to plead guilty to a lesser homicide charge. The trial court held an extensive pre-trial hearing on this point and ruled that there had been no prosecutorial vindictiveness. In his brief, appellant does not point out how the trial court's findings on this issue are erroneous; instead, he simply makes a sweeping assertion that the prosecutor acted vindictively in filing the first degree murder charge. After a careful review of the record of the pre-trial hearing, we are unable to say the trial court was clearly erroneous in making its determination that the prosecutor had not acted vindictively.

Appellant's final point, that the trial court erred in not instructing the jury that appellant had a constitutional right not to testify against himself, is without merit. When the defendant does take the stand to testify in his behalf, as appellant did in this case, the trial court need not instruct the jury that the defendant does not have to testify. *Caldwell* v. *State*, 214 Ark. 287, 215 S.W.2d 518 (1948).

Having addressed and decided each point likely to reoccur on retrial of this cause, we reverse and remand this case for the reasons stated hereinabove.

Reversed and remanded.

CORBIN and MAYFIELD, JJ., concur.

CRACRAFT, C.J., and COOPER, J., dissent.

DONALD L. CORBIN, Judge, concurring. I concur in the majority's decision to reverse and remand this case for a new trial because of the trial court's erroneous application of

Ark. Unif. R. Evid. 503 to the testimony of Dr. Stevens. The dissenting judges argue that we should not have decided this issue. Although the dissent does not expressly say so, it seems to suggest that we ought to apply Supreme Court Rule 9(e)(2) and affirm this case because the appellant's abstract of Dr. Stevens' testimony regarding his treatment of Marcella Shelley is deficient. The dissent overlooks the trial court's refusal to order Dr. Stevens to proffer his testimony into the record. Appellant's counsel asked the trial court to issue such an order, and the trial court refused to do so. Because of this refusal, Dr. Stevens' testimony of his treatment of Marcella Shelley was not in the record to be abstracted by appellant's counsel. The dissent's failure to recognize this fact produces a curious result — appellant is denied a new trial because his counsel could not perform the impossible task of abstracting nonexistent testimony. In their opinion, the dissenting judges cite five cases that set out the requirements of a proper appellate abstract. Of these, only two cases, *Williams* v. *Owen,* 247 Ark. 42, 444 S.W.2d 237 (1969), and *Kitchen* v. *State,* 271 Ark. 1, 607 S.W.2d 345 (1980), seem even remotely close on their facts to the instant case. As I read these two cases, their teaching is simply that counsel for appellants must abstract pertinent testimony in their briefs and cannot merely indicate, by references to page numbers, what pertinent testimony may be found in the record. The purpose of this rule is obvious — to spare appellate judges the burden of passing from office to office the single copy of the often massive trial record. This rule makes sense where there is pertinent testimony in the record. Because the testimony is *in* the record, counsel can abstract it. To insist, as the dissenting judges do, that this rule be applied to a record where the pertinent testimony was never allowed in the record in the first place creates a Catch-22 situation.[1]

As a final point, the dissent strikes off on this tack alone on its own motion. Not even the State, in its brief, bothered to call our attention to the so-called deficiencies in the appellant's abstract that the dissent has seized upon.

---

[1] "Catch-22: a paradox in a law, regulation, or practice that makes one a victim of its provisions no matter what one does." *Webster's New World Dictionary of the American Language,* at 224 (2d ed. 1984).

Obviously, the State agrees with this Court's majority that no deficiencies exist warranting the application of Rule 9 to this case.

MELVIN MAYFIELD, Judge, concurring. I agree that under the holding of *Baker* v. *State*, 276 Ark. 193, 637 S.W.2d 522 (1982), the physician-patient privilege did not prohibit the psychologist, who treated the witness Marcella Shelley, from testifying as to his diagnosis of her mental or emotional condition so long as he did not testify as to any communications made by her to him for the purpose of this diagnosis or treatment.

Appellant's abstract shows that at an omnibus hearing held four days before the trial began, the psychologist refused to testify as to the mental or emotional condition of Mrs. Shelley because of the physician-patient privilege. In his argument on this point, the appellant's attorney gave page references to the transcript where the trial court said he would not order the psychologist to testify and where the attorney stated that he had information that if the psychologist were required to testify he would say that Mrs. Shelley had a histrionic personality with a strong likelihood of fantasizing. I believe the essence of that testimony was admissible and that the jury should have been allowed to hear it.

I realize that these page references did not constitute an abstract as required by Rule 9, and that it is not practical and we are not required to search the transcript to find out what it says. In this case, I was willing to make the limited search necessary to consider the point argued, but an attorney who fails to properly abstract takes a big risk because we simply do not have the time to read the transcript in every case.

On the narrow grounds above indicated, I concur in the reversal and remand of this case.

GEORGE K. CRACRAFT, Chief Judge, dissenting. I respectfully but strongly dissent from the majority opinion reversing this conviction. I thoroughly agree with the majority that under the ruling in *Baker* v. *State*, 276 Ark.

193, 637 S.W.2d 522 (1982), testimony of a physician with regard to diagnosis and treatment is not within the privilege asserted. If the abstract furnished me had contained evidence that the trial court had excluded unprivileged relevant testimony such as that cited in the majority opinion I might agree with their conclusion. The pretrial hearing referred to in the majority opinion appears in the appellant's abstract in two sentences quoting Dr. Stevens as admitting he had treated the witness in November 1982 and refusing to testify as to her condition based upon the physician-client privilege. Nothing else with regard to Dr. Stevens appears in the abstract of that proceeding and at no° place in the entire abstract furnished me was there a proffer of what Dr. Stevens would have said. It is a well settled rule that the exclusion of evidence is not reversible error where there is no proffer of what that evidence would have been. *Simmons* v. *McCollum*, 269 Ark., 811, 601 S.W.2d 232 (Ark. App. 1980).

The substance of the testimony and rulings of the court on which the majority rely appears in appellant's printed argument with only scattered transcript page references in some but not all instances. In reaching its result the majority have, in my opinion, departed from a well established rule not only of our courts but of almost universal application that an appellant must demonstrate error from his abstract of the record. On appeal the *abstract* of the record constitutes the *record,* and the appellate court considers only that which is contained in the abstract. *Williams* v. *Owen,* 247 Ark. 42, 444 S.W.2d 237 (1969); *Corning Bank* v. *Bank of Rector,* 265 Ark. 68, 576 S.W.2d 949 (1979); *Jones* v. *Reed,* 267 Ark. 237, 590 S.W.2d 6 (1979); *Smith* v. *State,* 278 Ark. 462, 648 S.W.2d 792 (1983). It has been often stated that where the appellant's abstract does not contain the testimony on which he bases his argument our practice is to rely on the record only if it shows the trial court's decision should be affirmed on a particular point, but we do not explore the record for prejudicial error if none is shown to us. *Smith* v. *State, supra.* The mere scattering of transcript references throughout appellant's argument is not a substitute for a proper abstract. *Kitchen* v. *State,* 271 Ark. 1, 607 S.W.2d 345 (1980). The reason for such a rule is obvious. It is to permit deletion of those parts of the proceeding which have no

bearing on the issues and to bring to the court's attention only those parts of the proceedings that do. Our court has often pointed out the impossibility of all appellate judges reading a single transcript. I was not able to do so here and for that reason I was wholly unable to follow the arguments of either the appellant in his brief or the presentation of the case in conference.

JAMES R. COOPER, Judge, dissenting. Although I fully agree with Judge Cracraft's dissenting opinion, because of Judge Corbin's concurring opinion I feel compelled to write. First, it is worth emphasizing that Judge Cracraft noted that the abstract supplied did not include "unprivileged *relevant* testimony" (emphasis mine). I agree that it did not, but even more important, nothing was proffered so that the trial court could have determined the relevancy of the testimony it is claimed that Dr. Stevens would have given. Judge Corbin's concurring opinion states that the trial court refused to order Dr. Stevens to proffer his testimony into the record. Any such request of the trial court is not included in the briefs furnished this Court. It is true that the Attorney General's office, in a supplementary abstract, provided us with an abstract of the pretrial motion, and the argument before the trial court concerning Dr. Stevens' records, but that exchange between counsel and the trial court does not include a request that Dr. Stevens be required to proffer the records and his testimony.

Judge Corbin indicates that Judge Cracraft and I would require that counsel do the impossible, i.e., abstract non-existent testimony. That is an inaccurate reading of the dissenting opinion; the dissenting opinion of Judge Cracraft simply states that, since the Court does not know, *from the abstract,* what Dr. Stevens might have said, we will not search the record to find out. This becomes even more obviously reasonable when the trial court was never asked to require Dr. Stevens to answer in a proffer.

For the reasons stated in Judge Cracraft's dissenting opinion, and for the reasons stated herein, I would affirm. Further, I find no merit to the other points raised by the appellant.