Dawn Hall BAKER *v.* STATE of Arkansas

CR 85-227                                           711 S.W.2d 816

Supreme Court of Arkansas
Opinion delivered July 7, 1986

*William R. Simpson, Jr.,* Public Defender, and *Howard W. Koopman, Arthur L. Allen,* and *Deborah Sallings,* Deputy Public Defenders, by: *Jerry Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Att'y Gen., by: *Clint Miller,* Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Dawn Hall Baker was convicted by a jury of three counts of capital felony murder and sentenced to three terms of life without parole. We affirm the convictions.

Baker met Charles Franklin Stoner, a taxi driver, on October 29, 1984. On November 26, they robbed Capitol Cab Company, Stoner's former employer. During the robbery, Stoner stabbed and killed the dispatcher, Roma Silvey. On November 29 Stoner and Baker went to Mark Graves' apartment in Maumelle. Stoner knew Graves from driving him in his taxi. Graves was paralyzed and confined to a wheelchair. Stoner stabbed Graves three times, killing him, and the couple took his wallet and a box of foreign coins. On December 2, the couple went to Ken and Laurie Goodwin's house. The Goodwins had also ridden with Stoner. They were both blind and Mrs. Goodwin is hard of hearing. Stoner stabbed Mr. Goodwin six times, killing him. Stoner and Baker took Goodwin's wallet and Mrs. Goodwin's purse. The couple was arrested December 10 in Lenoir, Tennessee, after using Ken Goodwin's credit card.

Baker's first argument is that the statements she made after her arrest should have been suppressed because they were obtained while she was under the influence of narcotics and after she was interrogated for over 24 hours without proper food, medical attention or sleep. After the arrest, Baker was placed in a patrol car, orally advised of her rights and questioned. She executed a written rights form at the scene at 9:51 p.m. and again at about 10:50 p.m. when she dictated a statement. She was taken to a cell between 1:30 and 2:00 a.m. Arkansas officers arrived the next day and she was again questioned at about 12:15 p.m. The interview was taped and lasted until 1:00 p.m. Baker was then driven to Little Rock. She arrived at 10:00 or 11:00 p.m. and was again advised of her rights at 11:55 p.m. A taped interview between her and a deputy prosecuting attorney began at 12:21 a.m. and ended at 12:55 a.m. A transcript of that interview was the only statement admitted into evidence. Baker was admitted to the hospital December 23 for symptoms of drug withdrawal.

Baker moved to have her statements suppressed. After a hearing the trial court denied the motion. At the hearing Baker maintained that she injected herself with Dilaudid about an hour before her arrest. She said that she hid ten more Dilaudid tablets in her boots and took them over the course of the next few days. She said that she began suffering withdrawal symptoms at about 1:00 or 2:00 a.m. on December 11, while being questioned by the Tennessee authorities. She said that she was interrogated all

night and was not taken to her cell until morning when breakfast was brought to her. At that time she was so sick from withdrawal, she was unable to eat. Baker contended that she did not sleep that night nor on the way to Little Rock the next day.

Her testimony was directly contradicted by the officers involved. The arresting officer, who first questioned Baker, said that she was very willing to make a statement and did not seem to be under the influence of drugs or alcohol. The officer who took her statement at headquarters in Tennessee said that her mental and physical condition was good and that she did not appear to be under the influence of drugs or alcohol. The Tennessee authorities testified that she was taken to a cell at 1:30 or 2:00 a.m., given some food at that time, and that prisoners are ordinarily awakened at 7:30 and given breakfast at 8:00.

The Arkansas officers who questioned Baker the next day testified that Baker was cooperative and did not appear to be under the influence of drugs or suffering from withdrawal. She was taken to Little Rock and the officer who transported her said that they ate and that she slept for a couple of hours on the way. After Baker's arrival at 10:00 or 11:00 p.m., she was interviewed at 12:21 a.m. The prosecutor who interviewed her testified at the hearing that she was quite lucid and did not seem to be under the influence of drugs or alcohol. She agreed to make the statement and was talkative.

When an in-custody statement is challenged, the state has the burden of proving by a preponderance of evidence that the statement was voluntarily given. On appeal we make an independent determination of this issue and affirm the trial court's ruling unless it is clearly wrong. *Scroggins* v. *State*, 276 Ark. 177, 633 S.W.2d 33 (1982). We do not find such error. Each of the officers testified that they saw no evidence that Baker was under the influence of drugs. She appeared to understand her rights and was cooperative in giving the statements. None of the interviews were particularly long. It was for the trial court to weigh the evidence and resolve the credibility of the witnesses. *Hunes* v. *State*, 274 Ark. 268, 623 S.W.2d 835 (1981). The trial court believed that Baker's faculties were not impaired and that a bed was provided for her in Tennessee while she was in custody. It rejected her testimony that she was not permitted to sleep, and we

cannot say that finding was clearly against the preponderance of the evidence. We affirm the finding that Baker's statements were voluntarily given.

■■ Baker's next two arguments have been settled. The overlap between our first degree murder and capital murder statutes has been upheld. *Penn v. State*, 284 Ark. 234, 681 S.W.2d 307 (1984). Death qualified juries are constitutional. *Lockhart v. McCree*, ___ U.S. ___, 106 S.Ct. 1758 (1986).

Pursuant to Rule 11(f) of the Rules of the Supreme Court and Court of Appeals, the state has raised what it perceives may be a prejudicial error. Baker argued in the penalty phase of her trial that pecuniary gain should not be submitted as an aggravating circumstance which would justify the death penalty, since that duplicates an element of the crime of robbery/murder. The argument is based on *Collins v. Lockhart*, 754 F.2d 258 (8th Cir. 1985), *cert. denied*, ___ U.S. ___, 106 S.Ct. 546 (1986), where the Eighth Circuit found that the state violates the eighth and fourteenth amendments of the United States Constitution by using an aggravating circumstance as an element of the underlying crime.

■ Since Baker received a sentence of life without parole, instead of the death penalty, she could not have been prejudiced by the submission of the aggravating circumstance. *See Williams v. State*, 260 Ark. 457, 541 S.W.2d 300 (1976); *Sumlin v. State*, 266 Ark. 709, 597 S.W.2d 571 (1979).

Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11(f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

Affirmed.