Larry Dean ROBERTSON *v.* STATE of Arkansas

CR 88-56                                                      765 S.W.2d 936

Supreme Court of Arkansas
Opinion delivered February 27, 1989

*Haddock & Mazzanti*, by: *James W. Haddock; Johnson & Harrod*, by: *S. Reid Harrod*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Larry Dean Robertson appeals his conviction of capital murder for which he was sentenced to life imprisonment without parole. Robertson was accused of murdering Mrs. Bernice Sanderlin. The evidence showed that Robertson was released from prison and taken by a prison official to Dumas where he was to get on a bus. He went into a business establishment where he stabbed Mrs. Sanderlin with a pair of scissors. The scissors penetrated her eye and brain and caused her death. He left with Mrs. Sanderlin's purse. The judge refused at several stages of the trial to rule on whether Robertson was mentally competent to stand trial. The judge erroneously thought, and stated repeatedly, that the question of competency to stand trial was to be resolved by the jury. We have no choice but to reverse and remand for a new trial.

Robertson was committed to the state hospital for a pre-trial mental examination. The report, filed on June 10, 1987, concluded he was capable of cooperating effectively with his attorney. On August 7, 1987, the two lawyers who had been appointed to defend Robertson moved to suspend activity in the case and submitted affidavits to the effect that Robertson visualized the issues in his case in a manner incomprehensible to reasonable persons, and that he was hallucinating and unable to assist the lawyers in defending him.

A pre-trial hearing was held to consider several motions, one of which was the motion to suspend activity in the case. Dr. Paula Lynch testified she examined Robertson at the state hospital. She had access to records of other medical facilities, one of which concluded Robertson was schizophrenic and that he had been taking Thorazine, a major tranquilizer, and that Navane, an antipsychotic drug had been prescribed for him. She did not interview Robertson's family. She found him to be virtually symptom free and concluded he was competent at the time of her evaluation of him. At the close of the hearing, the court denied the motion to suspend activity.

Counsel for Robertson then took Dr. Lynch's deposition pursuant to a court order. They asked her whether she had been hospitalized for any condition other than childbirth, and she

refused to answer, citing the fifth amendment. At a pre-trial hearing on October 5, 1987, counsel asked the court to hold Dr. Lynch in contempt for her failure to respond or to strike her testimony from the record. The prosecutor said he had no objection to striking Dr. Lynch's testimony and that he had no intention of calling her as a witness at the trial. The court refused to strike the testimony, noting that Dr. Lynch's testimony had been at the request of the defense.

Also at the October 5 hearing, counsel presented testimony by Robertson's parents to the effect that Robertson had had mental problems, and tendencies toward violence, since his high school days. They also testified about periods of hospitalization for mental illness Robertson had undergone in Mississippi. Dr. Douglas Stephens testified he had interviewed Robertson on several occasions and had concluded he suffered from paranoid schizophrenia and was unable to assist counsel in his defense.

At the conclusion of the hearing, the court denied the motion to suspend the proceedings due to Robertson's inability to communicate effectively with his counsel. The court stated it would be for the jury to decide if Robertson had a defense of mental defect. The prosecutor then asked the court to make a finding whether Robertson could communicate adequately with his attorneys. The court refused, again stating it was for the jury to decide. As abstracted by the appellant, the discussion was:

> Mr. Gibson [the prosecutor]: Could I ask the court to make a finding as to whether or not Mr. Robertson is able to communicate adequately with the attorneys?
>
> The court: No, that would be making a ruling. It's for the jury to determine his condition.
>
> Mr. Gibson: I'm talking about his fitness to proceed.
>
> The court: We're going to proceed.
>
> Mr. Gibson: In other words, the Court is so finding he is.
>
> The court: Fit to proceed. The jury has certain responsibilities, and that's what they're going to do.
>
> Mr. Haddock [defense counsel]: The Court's ruling is, if I understood the Court correctly, that it's a jury question for

them to determine whether or not he has present abilities to effectively assist counsel in his defense?

The court: Well, no, I'm ruling that it's for the jury to determine or not whether he was able to conform his actions to the requirements of the law on this alleged date.

Although the appellant did not abstract the remainder of the court's remarks, they are quoted accurately in the argument portion of his brief, and at page 5. of the state's brief it is acknowledged that the court stated just after the discussion quoted above that the court was not making "any ruling" as to Robertson's mental condition. The court's statement continued as follows:

Now, by finding that, when the jury finds that they'll be taking care of all these ancillary matters. Now, they can find whatever they find to be the facts, but I'm not going to make any rulings as to his mental condition and his abilities to consult with anybody or help anybody.

Throughout the pre-trial proceedings and during the trial, Robertson, against the advice of his counsel, insisted on making statements to the court, some of which could only be characterized as bizarre. He referred to various agencies of the federal government such as the CIA, the NSC, and the FBI, and demanded that the records kept on him by these agencies be furnished to him.

Toward the conclusion of the trial, Robertson insisted on making a statement before the jury. His counsel objected and renewed the motion to suspend the proceedings on the ground that Robertson was incapable of assisting in his defense. The prosecutor commented that the court was competent to determine whether Robertson was able to assist his counsel. The court denied the motion and again stated it would be for the jury to determine whether Robertson was competent.

The defense presented testimony of Dr. Stephens as well as testimony of Dr. Donald Gold, a psychiatrist who had visited with Robertson and studied his case while Robertson was hospitalized in Memphis for a severe burn. Dr. Gold testified that Robertson was schizophrenic and that the only way he could help his counsel would be by "overtly demonstrating to the world just how bizarre

and confused he is." After Dr. Gold's testimony, Robertson's counsel renewed the motion to suspend the proceedings. Robertson stated he wanted to exercise his first amendment right, presumably to testify. The court said: "You want to continue, Mr. Robertson?" Robertson replied affirmatively, and the court said: "All right, the trial will continue. Your motion is overruled. Denied, Mr. Haddock."

### 1. The court's duty

It is the duty of the court to rule whether an accused is competent to stand trial. The statute, Ark. Code Ann. § 5-2-309(a) (1987) provides: "If the defendant's fitness to proceed becomes an issue, it shall be determined by the court." In *Gruzen* v. *State*, 267Ark. 380, 591 S.W.2d 342 (1979), cert. denied, 449 U.S. 852 (1980), 459 U.S. 1020 (1982), we held it was error to leave the matter to the jury. *See Lipscomb* v. *State*, 271 Ark. 337, 609 S.W.2d 15 (1980); *Westbrook* v. *State*, 265 Ark. 736, 580 S.W.2d 702 (1979).

The court in this case proceeded correctly to a point. There was no error in refusal to suspend the proceedings after the pre-trial evaluation and hospital report and after Dr. Lynch's testimony. Nor was there any necessity to obtain a reevaluation of Robertson each time his counsel moved to suspend activity in the trial. All the court was required to do, if he remained convinced that Robertson was and remained fit to stand trial, was make that ruling. Instead, he said again and again that it was a matter for the jury to decide.

The state points out that by continuing with the trial, the court could be inferred to have made the ruling. It is also argued that the question of fitness to proceed was not referred to the jury, as no instruction was given on that point. We cannot agree with those arguments. If the court thought the question was one for the jury, continuing the trial was necessary in order to let them decide the issue. Both defense counsel and the prosecutor clearly understood the issue of fitness to stand trial was for the court to determine, and that explains the fact that neither side offered an instruction on the matter. But absence of such an instruction does not cure the court's misunderstanding that by deciding the general issue of Robertson's competency the jury would be deciding the "ancillary" matter of his fitness for trial.

As we said in *Gruzen* v. *State, supra,* "The fact that there was a great potential for prejudice in the court's failure to rule on the issue may be easily demonstrated, if the mere failure to make a ruling cannot be said to be prejudicial in and of itself." 267 Ark. at 389, 591 S.W.2d at 347. Here, each time the issue was raised, there was additional direct evidence which could have borne on the court's decision whether Robertson was fit to stand trial. The prejudice is obvious.

## 2. Dr. Lynch and the Fifth Amendment

Robertson has raised other issues. The only one likely to arise in the event of a new trial is whether the court should force Dr. Lynch to reveal her previous medical history or strike her testimony.

If the issue here were simply whether treatment of Dr. Lynch for psychiatric disorder is privileged, we might reach the same result as was reached by our court of appeals in *Horne* v. *State,* 12 Ark. App. 301, 677 S.W.2d 856 (1984). There it was held, based on *Baker* v. *State,* 276 Ark. 193, 637 S.W.2d 522 (1982), that evidence of medical treatment, as opposed to physician-patient communications, could not be withheld because it was not covered by the physician-patient privilege found in A.R.E. 503. Here, however, Dr. Lynch, whether advisedly or not, relied on her fifth amendment right not to incriminate herself.

The federal appellate courts have wrestled with whether the testimony of a witness must be stricken where, for example, upon cross-examination the witness refuses to answer questions citing the fifth amendment privilege. The cases hold that the ruling is within the trial court's discretion. *United States* v. *Seifert,* 648 F.2d 557 (9th Cir. 1980); *United States* v. *Star,* 470 F.2d 1214 (9th Cir. 1972). *See also United States* v. *Cardillo,* 316 F.2d 606 (2d Cir. 1963), cert. denied 375 U.S. 822 (1963). The testimony should be stricken if failure to answer deprives the party questioning the witness of the right to test the truth of the witness's direct testimony, as opposed to a collateral matter. *United States* v. *Cardillo, supra.*

Dr. Lynch's testimony was not before the jury. We find no error in the court's refusal to strike the testimony. The answers to the questions she was asked about her personal mental history

would not have refuted her previous report and direct testimony about Robertson's condition. Rather, the answers could only have been viewed as affecting the weight of her previous, direct testimony.

Reversed and remanded.

HICKMAN, J., concurs.

PURTLE and GLAZE, JJ., dissent in part.

DARRELL HICKMAN, Justice, concurring. I concur to update the history of our review of capital cases contained in *Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986) (Hickman, J., concurring), and *Ruiz and Van Denton* v. *State*, 280 Ark. 190, 655 S.W.2d 441 (1983) (Hickman, J., concurring).

Since *Fretwell*, we have reviewed the imposition of the death sentence in thirteen cases. We have upheld the death penalty in seven cases: *Starr* v. *State*, 297 Ark. 26, 759 S.W.2d 535 (1988); *Whitmore* v. *State*, 296 Ark. 308, 756 S.W.2d 890 (1988); *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 52 (1988), *petition for postconviction relief pending*; *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, ___ U.S. ___, 108 S.Ct. 202 (1987); *Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233, *cert. denied*, 479 U.S. 1101, 107 S.Ct. 1331 (1986), *petition for postconviction relief denied*, 292 Ark. 144, 728 S.W.2d 510 (1987).

We also upheld the death penalty in the unusual case of *Franz* v. *State*, 296 Ark. 181, 754 S.W.2d 839 (1988). Ronald Gene Simmons received the death penalty but waived his right to appeal his sentence. Franz attempted to bring an appeal as next friend. We determined Franz had no standing and affirmed Simmons' competency to waive his appeal.

We have reversed and remanded the following cases in which the death penalty was imposed: *Burnett* v. *State*, 295 Ark. 401, 749 S.W.2d 308 (1988); *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987); *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987); *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987).

In *Wilson* v. *State*, 295 Ark. 682, 751 S.W.2d 734 (1988), we found an error in the sentencing phase only. We vacated the

death sentence and remanded to allow either the imposition of a life sentence or the impanelling of a new sentencing jury.

We also found error in the sentencing phase in *Pickens v. State*, 292 Ark. 362, 730 S.W.2d 230 (1987). We had previously upheld Pickens' death sentence, 261 Ark. 756, 551 S.W.2d 212 (1977), *cert. denied*, 435 U.S. 909 (1978). But the Eighth Circuit reversed due to ineffective assistance of counsel. *Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir. 1983). On retrial, Pickens received the death penalty again, but we found error and reversed.

None of the above cases have been presented on a second appeal, nor have *Penelton v. State*, 277 Ark. 225, 640 S.W.2d 795 (1982), and *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982), which we reversed and remanded seven years ago. We reversed and remanded in *Hendrickson v. State*, 285 Ark. 462, 688 S.W.2d 295 (1985), the first time it was before the court, but the case was affirmed on its second appeal. *Hendrickson v. State*, 290 Ark. 319, 719 S.W.2d 420 (1986).

In the seven cases since *Fretwell* that have survived our review, six of the defendants are white and one is black. (Juries in these 13 cases imposed the death penalty on seven black men and six white men.)

During the period from May 12, 1986, to this date, we have reviewed 28 cases in which capital murder was the finding and the death penalty sought. The death penalty was imposed in 13 cases and life imprisonment without parole was imposed in the remaining 15.

Some cases are beginning to survive the gauntlet of the federal district court and the Eighth Circuit Court of Appeals. *Habeas corpus* relief has been denied in *Hayes v. Lockhart*, 852 F.2d 339 (8th Cir. 1988); *Hulsey v. Sargent*, 821 F.2d 469 (8th Cir.), *cert. denied*, ___ U.S. ___, 108 S.Ct. 299 (1987), and *Fairchild v. Lockhart*, 675 F.Supp. 469 (E.D. Ark. 1987). But some cases seem to just disappear into the federal judicial machinery. For instance, in 1980 we affirmed the conviction of Eddie Lee Miller. Miller filed a *habeas* petition in federal district court in 1981. Eight years have passed and there has been no ruling on the petition.

Other cases have met with similar delays. The *habeas* petition of John Edward Swindler has been pending in federal court since 1981; Clay Anthony Ford since 1982; Darrell Wayne Hill since 1983; Ricky Ray Rector since 1984; and Wilburn Anthony Henderson since 1984. The question has to be asked: why have these Arkansas cases been neglected or delayed? Arkansas deserves an answer.

*Habeas* relief has been granted in *Simmons* v. *Lockhart*, 856 F.2d 1144 (8th Cir. 1988), and *Singleton* v. *Lockhart*, 653 F.Supp. 1114 (E.D. Ark. 1986).

Two cases merit special mention. In 1986 the U.S. Supreme Court vacated the Eighth Circuit's decisions in *Ruiz and Van Denton* v. *Lockhart*, 754 F.2d 254 (8th Cir. 1985), and *Woodard* v. *Sargent*, 753 F.2d 694 (8th Cir. 1985), *vacated*, 476 U.S. 1112 (1986). The Eighth Circuit had reasoned that death qualified juries are unconstitutional, but the Supreme Court later held that they are not. *See Lockhart* v. *McCree*, 476 U.S. 162 (1986).

Nevertheless, after those decisions were vacated, the Eighth Circuit set aside the death sentences again, reasoning that it is unconstitutional to use pecuniary gain as an aggravating circumstance in a robbery-murder case (known as the "double counting" argument). *Ruiz and Van Denton* v. *Lockhart*, 806 F.2d 158 (8th Cir. 1986); *Woodard* v. *Sargent*, 806 F.2d 153 (8th Cir. 1986). That was also the reasoning used to reduce the death sentence to life imprisonment in *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 474 U.S. 1013 (1985). But in the recent case of *Lowenfield* v. *Phelps*, ___ U.S. ___, 108 S.Ct. 546 (1988), the Supreme Court overruled the Eighth Circuit's position on the issue.

After thirteen years of court review, the death sentence still remains unexecuted. I have kept these figures for my own information as well as for anyone else interested in how the law of capital punishment fares. One safe conclusion can be made: there seems to be no end to judicial review of these decisions.

### *ADDENDUM*

In the following cases this court affirmed the appellants' death sentences:

*Starr* v. *State*, 297 Ark. 26, 759 S.W.2d 535 (1988). (Starr raped his 76 year old victim and killed her with an iron pipe.)

*Whitmore* v. *State*, 296 Ark. 308, 756 S.W.2d 890 (1988). (Whitmore stabbed his victim, cut her throat and took a small amount of money from her house.)

*Franz* v. *State*, 296 Ark. 181, 754 S.W.2d 839(1988). (Franz, as next friend, appealed the death sentence of Ronald Gene Simmons. Simmons killed two people, wounded four and took one hostage during a shooting spree in Russellville.)

*Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). (Gardner strangled a married couple and their daughter during the course of robbing their home.)

*O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 52 (1988), *petition for postconviction relief pending.* (O'Rourke murdered his parents.)

*Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied,* ___ U.S. ___, 108 S.Ct. 202 (1987). (Snell murdered a pawnshop owner in the course of a robbery.)

*Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233, *cert. denied,* 479 U.S. 1101, 107 S.Ct. 1331 (1986), *petition for post-conviction relief denied,* 292 Ark. 144, 728 S.W.2d 510 (1987). (Hill escaped from prison, took a family hostage, and later killed a state trooper.)

The court found error in the sentencing phase in *Wilson* v. *State*, 295 Ark. 682, 751 S.W.2d 734 (1988) (aggravating circumstance "especially heinous, atrocious or cruel" unconstitutionally vague), and in *Pickens* v. *State*, 292 Ark. 632, 730 S.W.2d 230 (1987) (evidence of the appellant's behavior subsequent to the crime should have been considered as a mitigating factor.)

The court has reversed the following death penalty cases, but they have not been presented again on appeal: *Burnett* v. *State*, 295 Ark. 401, 749 S.W.2d 308 (1988); *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987); *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987); *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653 (1987).

In the following cases, capital murder was charged and found and though the death penalty was sought, it was not imposed: *Hatley* v. *State*, 289 Ark. 130, 709 S.W.2d 812 (1986); *Watson* v. *State*, 289 Ark. 138, 709 S.W.2d 817 (1986); *Baker* v. *State*, 289 Ark. 430, 711 S.W.2d 816 (1986); *Rhodes* v. *State*, *rev'd and remanded*, 290 Ark. 60, 716 S.W.2d 758 (1986); *Hendrickson* v. *State*, 290 Ark. 319, 719 S.W.2d 420 (1986); *Thrash* v. *State*, 291 Ark. 575, 726 S.W.2d 283 (1987); *Rose* v. *State, rev'd and remanded*, 294 Ark. 279, 742 S.W.2d 901 (1988); *Scherrer* v. *State*, 294 Ark. 287, 742 S.W.2d 884 (1988); *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988); *Ronning* v. *State*, 295 Ark. 228, 748 S.W.2d 633 (1988); *McDougald* v. *State*, 295 Ark. 276, 748 S.W.2d 340 (1988); *Sellers* v. *State*, 295 Ark. 489, 749 S.W.2d 669 (1988); *Allen* v. *State*, 296 Ark. 33, 751 S.W.2d 347 (1988); *Bell* v. *State*, 296 Ark. 458, 757 S.W.2d 937 (1988); *Bowden* v. *State, rev'd and remanded*, 297 Ark. 160, 761 S.W.2d 148 (1988).

TOM GLAZE, Justice, dissenting in part. I respectfully dissent from the majority's holding that the trial court did not err in refusing to strike the testimony of Dr. Lynch after she asserted the fifth amendment. Dr. Lynch simply had no fifth amendment right to assert, yet the majority opinion allows a witness the right to refuse to testify even though that witness has no legal basis to do so.

Prior to trial, appellant's counsel obtained information that Dr. Lynch had suffered from psychiatric problems; thus, counsel requested the court to order Dr. Lynch to divulge her medical records which might reflect her professional competence and ability to testify. Both the state and defense counsel agreed to an order to require Dr. Lynch to be deposed and for her to bring her medical records to the deposition. At the subsequent deposition, Dr. Lynch, invoking the fifth amendment, refused to provide her medical information. Appellant's counsel moved to have Dr. Lynch held in contempt, or in the alternative, to strike her prior testimony concerning appellant's competency. Although the prosecutor stated that he had no objection to the striking of Dr. Lynch's testimony, the trial court still refused to grant the motion to strike or to hold Dr. Lynch in contempt.

Obviously, Dr. Lynch's testimony was an important part of

the state's case, especially concerning appellant's fitness to proceed to trial. The state was quite aware of the problem it had regarding Dr. Lynch as a witness because it decided not to call her at trial.

Clearly, the fifth amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge. *Ullmann* v. *United States*, 350 U.S. 422 (1956). Its [the fifth amendment's] sole concern is to afford protection against the danger to a witness of being forced to give testimony leading to the infliction of penalties affixed to criminal acts. *Id.*

Here, defense counsel was only seeking information concerning Dr. Lynch's prior medical history so as to impeach her testimony. In other words, the defense's quest for information had nothing to do with exposing Dr. Lynch to a criminal charge. In my view, the majority court's erroneous application of the fifth amendment has caused the court to reach an incorrect result, leaving the impression that the fifth amendment can be invoked to refuse to testify even in instances where the fifth amendment was never intended to apply. It is my opinion that a witness cannot justify his or her refusal to testify based upon the fifth amendment when he or she clearly has no grounds to assert that amendment.

The issue here, which the majority chooses to ignore, is whether Dr. Lynch's medical records and history (which purportedly reveal a psychiatric disorder) are privileged. In *Horn* v. *State*, 12 Ark. App. 301, 677 S.W.2d 856 (1984), the court of appeals, in accordance with *Baker* v. *State*, 276 Ark. 193, 637 S.W.2d 522 (1982), correctly held that the physician/patient privilege found in A.R.E. 503 only protects confidential communications between doctor and patient, as opposed to evidence of medical treatment. In the instant case, Dr. Lynch was not asked about confidential communications between herself and her doctor, but was only asked about the fact of treatment. By refusing to compel her to answer the questions or, in the alternative, to strike her testimony, the trial court has effectively denied the appellant the right to cross examine this important expert witness. This was clear error.

PURTLE, J., joins this dissent.