Scotty Ray GARDNER *v.* STATE of Arkansas

CR 97-785 963 S.W.2d 590

Supreme Court of Arkansas
Opinion delivered February 26, 1998

*Alvin Schay*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. This case presents a question concerning the law of prosecutorial vindictiveness. The appellant purported to enter a guilty plea which was subsequently vacated on federal habeas review. On retrial, the appellant was charged as a habitual offender based on prior felony convictions, most of which had occurred prior to the appellant's initial plea attempt. The trial court denied the appellant's motion to dismiss the habitual charge based on prosecutorial vindictiveness. We find no error and affirm.

On November 8, 1990, Scotty Ray Gardner was charged with two counts of criminal attempt to commit first-degree murder in Arkansas County Circuit Court. While the case was set for a jury trial on November 15, 1991, Gardner purported to enter a guilty plea to the two counts at a hearing on October 23, 1991. On October 30, 1991, the trial court sentenced Gardner to two concurrent terms of thirty years' imprisonment, with seven years of each term suspended.

In an unpublished opinion, this court affirmed the denial of Gardner's Rule 37 petition and his petition to withdraw the plea. *Gardner v. State*, No. CR 94-559 (Ark. slip op. Feb. 27, 1995). However, the United States District Court, Eastern District of Arkansas, found that the trial court failed to establish a factual basis for the guilty plea, and impermissibly sentenced Gardner without his presence or the presence of counsel. Accordingly, on January 11, 1996, the District Court ordered the issuance of a writ of habeas corpus conditioned on Gardner's rearraignment and retrial.

On February 13, 1996, the prosecuting attorney filed an amended information charging Gardner as a habitual offender with four or more felonies pursuant to Ark. Code Ann. § 5-4-501 (Repl. 1997). While at trial on July 11, 1996, Gardner objected to the amendment of the habitual-offender count, arguing that the amendment constituted a penalty for the exercise of his rights. He moved that the case should proceed as originally charged. The prosecutor explained as follows:

> The Court is well aware that a lot of times we don't complete our review of somebody's criminal record until well — until just before trial, and it's not at all uncommon for me to amend to allege habitual status a week before trial, just as long as I let defense counsel know. In this case also, we have an additional conviction after Mr. Gardner — after we all thought Mr. Gardner had plead [sic] guilty, which changed the — changed the statue even more. He has Oklahoma convictions; he has Fort Smith convictions. He has Cleveland County charges that were dismissed as a result of what we thought was a plea here. And then he subsequently had escape charges in Arkansas County. He is a habitual offender. And I think the State is entitled — he walked up there and we thought plead [sic] guilty. And I think the State is entitled to amend at any point in time. And I have told [defense counsel], well, I think I amended probably in January or February, as soon as I found this thing was being remanded, and I was able to complete my — complete my checking of his — of his past record.

The trial court asked whether Gardner could have been charged as a habitual before, to which the prosecutor responded in the affirmative for "small habitual." When asked again why Gardner

was not charged as a habitual offender initially, the prosecutor stated that:

> Your Honor, I had never gotten that far along. He walked up — we had never gotten that far along in — in trial preparation. There are a lot of times that we don't — until I see a case is going to trial I don't get certified copies of these things simply because they charge me every time I get a copy from Oklahoma, or Fort Smith, or wherever. We didn't get close enough to trial. We walked up there and plead [sic] guilty to the Court. I didn't — [defense counsel] might have an argument if I had extended him an offer of twenty-three years, and that was based upon a plea arrangement that we reached and then he set it aside. He refused, or rejected my first offer. And I did not tell the Court I wasn't going to extend him an offer. I said, "He has rejected my offer. I don't feel obligated to extend him another one.
>
> * * *
>
> And since then I have talked to the victims, and the victims have both said they want their day in court. And — and in this type of situation, I think I have got to give them — give them some deference, Judge.

Following jury selection, an in-chambers hearing was held where the prosecutor further explained that:

> [A]fter we discussed the issue of the alleged prosecutorial vindictiveness, I went back to and looked at the escape Information that was charged — filed against Mr. Gardner in 1991, to which he pled and received a sentence of four years. He was charged as a habitual offender at that time. That was well before there was any guilty plea set aside or anything else. And based upon that, I would — I would offer that as further evidence that there is no prosecutorial vindictiveness in this case.

Following the close of the State's case-in-chief, Gardner again objected to the increase in severity and moved that the case be submitted only on the original charges. The prosecutor responded with the escape information that he filed against Gardner in 1991, stating that he charged Gardner as a habitual "some five — four or five years before this guilty plea was set aside." While the jury was deliberating during the guilt phase, defense

counsel once again objected to the addition of the habitual charge. The prosecutor responded as follows:

> To bring anybody who ever uses this record up to date, Mr. Gardner was arrested in November. He was ordered committed to the State Hospital — the Southeast Arkansas. That was done, examination on 12-10. They recommend that he be seen at the State Hospital. All of which delays any — any decision. He was out on bond, he was seen and examined by them, that — that report came down May the eighteenth, or May of '91, sometime. Mr. Gardner then went to Oklahoma. His bond was revoked. Upon his return to the state of Arkansas he pled open-ended to the Court. Now, I don't know that there was ever a trial date set in this case.[1] I believe I have got the option to amend the habitual status at any point as long as the defendant has reasonable notice. It's also very important to point out that when he was charged with the escape in November of '91, that was an allegation of the habitual offender status, well before he filed any motion with the Federal Court. I have said he is manipulating the system speaking solely about what he has told the various mental health professionals that have dealt with him. I would also point out that the Amended Information was filed in February of 1996. As soon as I found out this case had been remanded, I knew that I was intending to charge Mr. Gardner as a habitual and I amended. It's not like I did it just before trial. [Defense counsel] has known about it.

The trial court ultimately denied Gardner's request that the case be submitted as originally charged. The felony convictions given to the jury in support of the habitual count included a 1983 Oklahoma larceny of merchandise from a retailer plea, and an Oklahoma unauthorized use of a vehicle plea on the same date. Gardner had also pleaded guilty in 1986 to theft of property in Sebastian County, and to a 1992 second-degree escape in Arkansas County.

Following the trial, the jury found Gardner guilty of one count of criminal attempt to commit murder in the first degree and one count of battery in the first degree, and imposed sen-

---

[1] As already stated, the record shows that the case was in fact set for trial on November 15.

tences in the amount of thirty and twenty years' imprisonment, respectively. The jury also recommended that these sentences run consecutively. The trial court entered a judgment and commitment order reflecting these sentences, and ordered that they be served consecutively.

■■ As set forth in Gardner's sole point on appeal, his only argument for reversal is that the trial court erred in allowing the prosecutor to amend the information to add the habitual-offender charge. However, a fair reading of the remainder of Gardner's brief suggests that he additionally contends that the trial court was vindictive in imposing consecutive sentences, as opposed to the concurrent sentences originally imposed when the purported guilty plea was entered. To the extent that this is a claim that the trial court was vindictive in imposing consecutive sentences, we agree with the State that this argument was waived by the failure to object to the imposition of consecutive sentences, and more particularly by the failure to object that the imposition of consecutive sentences violated his due-process rights. We now turn to Gardner's claim that he was denied due process when the prosecutor amended the information against him to add the habitual-offender count. We review a trial court's finding regarding prosecutorial vindictiveness for clear error. *Horne v. State*, 12 Ark. App. 301, 677 S.W.2d 856 (1984).

■■ In *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled in part*, *Alabama v. Smith*, 490 U.S. 794 (1989), the Supreme Court fashioned a prophylactic rule to protect against a sentencing authority imposing a greater sentence following a defendant's exercise of his right to appeal. When a defendant has successfully attacked his first conviction, due process requires that vindictiveness "play no part in the sentence he receives after a new trial." *Id.* The Court also held that due process requires that a defendant "be freed of apprehension" of a retaliatory motivation on the part of the sentencing judge so that the defendant will not be deterred from exercising his right to appeal or collaterally attack his first conviction. In order to "assure the absence of such a motivation," the Court concluded that whenever a judge imposes a more severe sentence after a new trial, the "reasons for his doing so must affirmatively appear." *Id.* Moreover, "[t]hose reasons

must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made a part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed upon appeal." *Id.*

■ *Pearce's* prophylactic rule was extended to prosecutors in *Blackledge v. Perry*, 417 U.S. 21 (1974). In *Blackledge* the respondent, already an incarcerated prisoner, was initially charged in North Carolina District Court with misdemeanor assault with a deadly weapon. Following a bench trial, the respondent was given a six-month sentence to be served following the expiration of the time he was already serving. Respondent then exercised his statutory right to trial *de novo* in North Carolina Superior Court. Following the filing of the notice of appeal, the prosecuting attorney obtained an indictment (based on the same conduct) for felony assault with a deadly weapon with intent to kill and inflict serious bodily injury. Respondent pleaded guilty to the indictment in Superior Court, and was sentenced to a term of five to seven years to be served concurrently with time already being served.

■ The Supreme Court granted certiorari to consider whether the "indictment on the felony charge constituted a penalty for his exercising his statutory right to appeal" in violation of the Due Process Clause of the Fourteenth Amendment. *Id.* Respondent's due process arguments were "derived substantially" from *Pearce, supra. Blackledge, supra.* While the *Blackledge* Court acknowledged that there was no evidence of prosecutorial bad faith or maliciousness in seeking the felony indictment, "[t]he rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.'" *Blackledge, supra* (quoting *Pearce, supra*). The *Blackledge* Court reasoned that the same considerations applied so that a person convicted of an offense should be free of apprehen-

sion of the substitution of a more serious charge, subjecting that person to increased penalties and other collateral consequences, once that person exercised his statutory right to a *de novo* trial. Thus, due process required that "such a potential for vindictiveness" not enter North Carolina's two-tiered appellate process. *Blackledge, supra*. "We hold, therefore, that it was not constitutionally permissible for the State to respond to [respondent's] invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*." *Blackledge, supra*.

*United States v. Goodwin*, 457 U.S. 368 (1982), limited the holdings of *Pearce* and *Blackledge* insofar as they related to a presumption of vindictiveness. In *Goodwin*, the "question presented [w as] whether a presumption that has been used to evaluate a judicial or prosecutorial response to a criminal defendant's exercise of a right to be retried after he has been convicted should also be applied to evaluate a prosecutor's pretrial response to a defendant's demand for a jury trial." The respondent in *Goodwin* was initially charged with several misdemeanor offenses, but was subsequently indicted with felony offenses arising out of the same conduct once plea negotiations broke down. Respondent moved to set aside the verdict on the ground of prosecutorial vindictiveness, alleging that the indictment on the felony charge "gave rise to an impermissible appearance of retaliation." *Id*.

The *Goodwin* Court declined to apply the *Blackledge* prophylactic rule. Examining its prior holdings, the Supreme Court stated that in *Pearce* the Court "applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *Goodwin, supra*. Likewise, in *Blackledge*, "the Court held that the likelihood of vindictiveness justified a presumption that would free defendants of apprehension of such a retaliatory motive on the part of the prosecutor." *Goodwin, supra*. Distinguishing *Pearce* and *Blackledge*, the *Goodwin* Court explained that "[t]he decisions in these cases represent a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided." The case was more like *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), where the Court held that there was no due process prohibition against a prosecutor carrying out a threat made

during plea negotiations, to bring additional charges should the defendant refuse to plead guilty to the offense as originally charged. Like *Bordenkircher*, the facts in *Goodwin* arose "from a pretrial decision to modify the charges against the defendant." *Goodwin, supra.* However, unlike *Bordenkircher*, there was no evidence in the record to support a claim of actual vindictiveness on the part of the prosecutor, "the prosecutor never suggested that the charge was brought to influence the respondent's conduct." *Goodwin, supra.* Because there was no evidence of actual vindictiveness, the *Goodwin* case turned on whether a presumption of vindictiveness would apply.

Here the Supreme Court was wary of adopting an "inflexible presumption of prosecutorial vindictiveness in a pretrial setting":

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins — and certainly by the time a conviction has been obtained — it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

> In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

*Goodwin, supra.*

The timing of the prosecutor's action suggested that a presumption of vindictiveness was not warranted. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution . . . the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Goodwin, supra.* While the respondent initially expressed interest in plea negotiations, he later opted for a jury trial in District Court, forcing the Government to "bear the burdens and uncertainty of a trial." *Goodwin, supra.* "Perhaps most importantly, the institutional bias against the retrial of a decided question that supported the decisions in *Pearce* and *Blackledge* simply has no counterpart in this case." *Goodwin, supra.*

The Supreme Court further limited the *Pearce* holding in *Alabama v. Smith,* 490 U.S. 794 (1989). In *Smith* the respondent pleaded guilty to charges of burglary and rape, and the prosecutor dropped a sodomy charge in exchange. The trial court sentenced him to two thirty-year terms of imprisonment to be run concurrently. Later, the respondent successfully got his guilty plea vacated and the case was remanded for retrial. The case was reassigned to the same trial judge, and the case went to trial on the three original charges, including the sodomy charge. The jury found respondent guilty on all three counts, and the trial court imposed a sentence of life imprisonment on the burglary conviction, in addition to a concurrent term of life imprisonment on the sodomy conviction and a consecutive term of 150 years' imprisonment on the rape conviction. The trial court explained that it imposed "a harsher sentence than it had imposed following respondent's guilty plea because the evidence presented at trial, of which it had been unaware at the time it imposed sentence on the guilty plea, convinced it that the original sentence had been too lenient." *Id.*

 The Supreme Court held that the Alabama Supreme Court erroneously applied the *Pearce* prophylactic rule to presume vindictiveness on the part of the trial court. The *Smith* Court explained that the *Pearce* presumption of vindictiveness was limited in *Goodwin* to circumstances in which there was a "'reasonable likelihood'. . . that the increase in sentence is the product of actual

vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Alabama v. Smith, supra* (quoting *Goodwin, supra*). Following this reasoning, the Court concluded that "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness of the sentencing judge. Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." *Alabama v. Smith, supra*. While the same judge that sentenced following a guilty plea may be imposing sentence following trial, the judge is not "do[ing] over what it thought it had already done correctly." *Alabama v. Smith, supra*. The Court went so far as to overrule *Simpson v. Rice*, the companion case to *Pearce, supra*, since it involved an application of the presumption of vindictiveness in a case where an increased sentence was imposed following the vacation of a guilty plea. "[T]here is no basis for a presumption of vindictiveness where a second sentence imposed after trial is heavier than a first sentence imposed after a guilty plea." *Alabama v. Smith, supra*.

██ ██ The upshot of the Supreme Court cases is that a defendant can establish a claim for prosecutorial vindictiveness in charge selection in two ways. First, the defendant may establish actual vindictiveness by "prov[ing] objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Goodwin, supra*. Of course, this is an extremely difficult burden for the defendant to satisfy, given that it involves proving the prosecutor's state of mind.[2] In the present case, there is little objective evidence of actual vindictiveness in the record. While at one time defense counsel alleged that the prosecutor's remarks during trial that Mr. Gardner was "abusing the system" constituted evidence

---

[2] In *Pearce, supra*, the Supreme Court noted that it would be "extremely difficult" to prove retaliatory motivation in an individual case. Likewise, in *Goodwin, supra*, the Court quoted from the Government's brief in acknowledging that it would be a "rare case" in which the defendant could successfully demonstrate that enhanced charges were in actuality a penalty for the exercise of a procedural right.

of actual vindictiveness, this evidence fails to satisfy the defendant's burden to prove actual vindictiveness.

Rather, Gardner must rely on the *Blackledge* presumption of vindictiveness, which was applied where the prosecutor substituted a "more serious charge for the original one, thus subjecting [the defendant] to a significantly increased potential period for incarceration" following the exercise of a "right." *Blackledge, supra.* In the present case, the State amended the information against Gardner to add a habitual-offender charge, exposing Gardner to a greater range of punishment than he was exposed to when he pleaded guilty to the initial charges. Professor LaFave writes that a charge is "obviously" "more serious" for *Blackledge* purposes when a count is added under a habitual-criminal act. Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure,* § 13.7(c) (1984 and Supp. 1991) (citing *James v. Rodriguez,* 553 F.2d 59 (10th Cir. 1977)(holding that "tactical" filing under the New Mexico Habitual Criminal Act on defendant's retrial violated the defendant's right of appeal where the State "made no attempt to justify the increased punishment")).

 We hold that Gardner has established a prima facie due process violation by showing that the State added a charge against him so as to expose him to a greater range of punishment following the successful collateral attack of his guilty plea.[3] Thus, this case turns on whether the State sufficiently rebutted a presumption of vindictiveness.

 In *Blackledge, supra,* the Supreme Court provided an example of when the State may permissibly substitute a more serious charge on retrial — when it was "impossible" to bring the increased charge at the first trial — for example when a homicide victim had not yet died at the time of the first trial, thus making it impossible to bring a homicide charge. The *Goodwin* Court, in reviewing the *Pearce* holding (on which *Blackledge* was based), stated that "the [*Pearce*] Court applied a presumption of vindictiveness, which may be overcome only *by objective information in the*

---

[3] The State concedes as much in its brief, writing that "The question to be decided is whether the amendment constituted vindictiveness by the prosecutor. The State bears the burden of overcoming a presumption of vindictiveness."

*record justifying the increased sentence."* *Goodwin, supra.* (emphasis added). In a later footnote reviewing the *Blackledge* opinion, the *Goodwin* Court stated that "[t]he presumption again could be overcome by *objective evidence justifying the prosecutor's action."* *Goodwin, supra* (emphasis added). Further guidance can be found in *Texas v. McCullough*, 475 U.S. 134 (1986), where a majority of the Supreme Court refused to technically limit the sentencing authority's ability to rebut a presumption of vindictiveness with information obtained after the initial trial. The *Pearce* opinion was not "intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified. Restricting justifications for a sentence increase to only 'events that occurred subsequent to the original sentencing proceedings' could in some circumstances lead to absurd results." *McCullough, supra.*

Professor LaFave writes that other jurisdictions vary as to what showing will suffice to rebut the presumption. LaFave, *supra.* He identifies approaches that range from a requirement that a prosecutor merely state a nonvindictive reason when charges are added, *e.g., Jackson v. Walker*, 585 F.2d 139 (5th Cir. 1978), to a stringent requirement that the prosecutor "dispel any appearance of prosecutorial vindictiveness." *E.g., United States v. Burt*, 619 F.2d 831 (9th Cir. 1980). As an attractive "middle ground," LaFave suggests an approach set forth in *United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980), holding that where counts are added, the prosecutor must produce an "objective explanation" for his actions. "[O]nly objective, on-the-record evidence can rebut a finding of realistic likelihood of vindictiveness." *United States v. Andrews, supra.* As examples of explanations that could rebut the presumption, the *Andrews* court explained that a prosecutor could not rebut the presumption by stating that she had merely "made a mistake," but could prevail by showing governmental discovery of previously unknown evidence, or previous legal impossibility. *United States v. Andrews, supra.*

██ ██ We agree that in the case of added counts, a prosecutor should be able to rebut a presumption of vindictiveness with an objective, on-the-record explanation. In the present case, there is more than a simple subjective assertion of the prosecutor's

good faith. Rather, the prosecutor explained that "a lot of times" he did not completely review a case "until just before trial." He stated that the cost of obtaining these records was a factor in waiting until trial was imminent. Because the case did not proceed to trial, the prosecutor did not discover the existence of the prior convictions. Moreover, the prosecutor pointed out that when he filed the information against Gardner on the escape count, prior to the federal grant of habeas relief, he charged Gardner as a habitual offender. Thus, this also arguably rebuts a likelihood of vindictiveness given that the prosecutor had charged Gardner as a habitual offender before the exercise of his federal habeas rights. In sum, the prosecutor produced objective, on-the-record evidence from which the trial court could find a sufficient justification for the addition of the habitual count. Based on these facts, we cannot say that the trial court was clearly erroneous in allowing the State to amend the information to add the habitual count.

Affirmed.

NEWBERN and BROWN, JJ., dissenting.

ROBERT L. BROWN, Justice, dissenting. I agree with the majority opinion that a *prima facie* case of a due process violation was made by the prosecutor's adding the habitual offender count on retrial. I also agree that our test should be whether the prosecutor offered an objective explanation for why the enhancement charge was not originally made. *United States v. Goodwin*, 457 U.S. 368 (1982). And I, finally, agree that a mere mistake by the prosecutor in not filing the habitual offender count initially is not sufficient to rebut the presumption. *See United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980), *cert. denied*, 450 U.S. 927 (1981).

The problem in this case is that the facts do not warrant a rebuttal of the presumption under the law set out by the majority. First, the only explanation by the prosecutor as to why he did not initially charge Gardner as a habitual offender is that the matter never came to trial and he usually checked for other convictions and amended the criminal information, if appropriate, a week before trial. This explanation falls short of an objective explanation and falls more readily into the category of a mistake. The

prosecutor attended the plea, and what could be of greater importance to the sentencing judge than the fact that the defendant had a prior record? Yet, the trial judge did not have this information available when he first sentenced Gardner.

There is also the point that there is no indication that the trial court used the presumption-of-vindictiveness standard or sought an objective explanation from the prosecutor to rebut that presumption. What the trial court did was rely on *Aaron v. State*, 319 Ark. 320, 891 S.W.2d 364 (1995), which is distinguishable from this case on the facts. In *Aaron*, the prosecutor tried to amend the criminal information in the first trial to charge the defendant as a habitual offender and the trial court sustained the defendant's objection that the prosecutor was too late. We reversed the conviction, and prior to retrial, the prosecutor "corrected its oversight" and amended the information. *Aaron*, 319 Ark. at 323, 891 S.W.2d at 365. We held that this correction was not evidence of prosecutorial vindictiveness. Contrary to the facts in *Aaron*, in the instant case, there was no effort by the prosecutor to amend Gardner's information before his plea and sentence.

In sum, we are talking merely about a mistake made by the prosecutor to rebut the presumption of vindictiveness. That is not sufficient under *United States v. Andrews, supra*. Accordingly, I dissent.

NEWBERN, J., joins.